**AMERICAN FIDELITY & CASUALTY CO., Inc., v. WILLIAMS et al.**

No. 3491.

Court of Civil Appeals of Texas. Amarillo.

Dec. 3, 1930.

Rehearing Denied Jan. 14, 1931.

Alfred M. Scott and Douglas & Spiller, all of Lubbock, and John H. Awtry, of Dallas, for appellant.

Vickers & Campbell, of Lubbock, for appellees F. V. Williams and wife.

Benson & Benson, of Lubbock, for appellee Ed C. Abbott.

HALL, C. J.

Ed C. Abbott was licensed as a "motor bus company" under the provisions of Vernon's Annotated Civil Statutes, art. 911a, which relates to the regulation of motor bus transportation. He was engaged in operating a line of motor busses from Lubbock to Spur, Tex., over a specified route. On June 1, 1928, one of Abbott's motor busses, while being operated by a son, an employee, on Tenth street, in the city of Lubbock, ran over the minor daughter of appellees F. V. Williams and Sarah Williams. The child died the same night, and Williams and wife recovered a judgment against Abbott on January 23, 1929, decreeing a recovery of $2,000 in favor of F. V. Williams and $3,000 in favor of his wife. The appellant herein, the casualty company, was made a party defendant to that action. It filed its plea in abatement, which was sustained by the court. The appellant casualty company had theretofore issued its policy under the provisions of the Texas Motor Bus Law insuring Abbott against liability on account of injuries "caused by the operation of the busses used in his business. Recovery upon said policy shall be limited to $5,000.00 for any one accident to any one person."

After Williams and wife recovered the judgment hereinbefore mentioned against Abbott, they filed this suit against Abbott and against the appellant casualty company to recover the amount of the judgment which they had theretofore recovered against Abbott, alleging that the judgment had become final, that execution had been issued thereon and returned nulla bona. Williams and wife alleged that on June 1, 1928, the casualty company had insured its codefendant Abbott against loss imposed by law upon him arising and resulting from claims against him for damages by reason of his ownership, maintenance, and operation of his motor-propelled vehicles which he operated in his business of carrying passengers for hire in Lubbock county and other counties under and by virtue of what is known as the Motor Bus Transportation Law of the state of Texas, being chapter 270, page 399, Acts of the 40th Legislature (Vernon's Ann. Civ. St. art. 911a). That such insurance policy was in force on June 1, 1928, indemnifying the said Abbott to the extent of $5,000, and contained indorsements which specifically provided, as required by law, that said casualty company would pay all damages recovered against Abbott by reason of personal injuries to any one arising out of the actual operation of any motor bus without regard to the solvency or insolvency of Abbott, and that any judgment creditor of Abbott on a claim for such personal injuries should have a right of action against the insurer to recover the amount of such judgment rendered

against Abbott in a sum not exceeding $5,000. The petition then sets out the facts concerning the death of Ella Mae Williams, the minor daughter of the appellees. That thereafter on August 18, 1928, Williams and wife, the parents of said child, sued Abbott in the Ninety-Ninth district court of Lubbock county in cause No. 3404, and recovered separate judgments aggregating $5,000 against Abbott. That thereafter, in due time, execution was issued upon said judgment and was returned by the sheriff of Lubbock county unsatisfied. The prayer is that they have judgment against the casualty company for the amounts of their respective recoveries against Abbott, with 6 per cent. interest from the date of said judgment and all costs. That as to the defendant Abbott they prayed that their judgment against him be in all things confirmed, and that, in the event they recovered against the casualty company, said judgment against Abbott be satisfied and canceled.

The casualty company answered, alleging a misjoinder of parties defendant, that this action had been prematurely brought and should be abated for the reason that under the laws of Texas no execution could lawfully be issued on the judgment which the appellees had recovered against Abbott. That neither plaintiffs nor the sheriff of Lubbock county had ever attempted in good faith to collect the amount of said judgment or to find and levy upon any property belonging to the said Abbott, and, until a bona fide effort has been made to collect said judgment against Abbott, this suit is prematurely filed.

The policy is attached as an exhibit to the answer, and the company denies its liability in any amount, alleging that, under the terms of the Motor Bus Transportation Law, the defendant Abbott was required to operate his vehicles as a common carrier for hire under the rules and regulations of the railroad commission of Texas and subject at all times thereto. That such law contemplated that each licensee should operate motor busses only over strictly defined and designated routes between designated points and for fixed rates and further upon time schedules authorized by the said railroad commission. That the said Abbott, operating under the name of Lone Star State, holding certificate No. 142 issued by the railroad commission, was permitted to operate a line of motor busses along the usual and mainly traveled streets and highways between Lubbock and Spur, Tex. That aside from this the said Abbott had no permit authorizing him to operate any vehicle for transportation of passengers for hire, and that said policy and Motor Bus Law did not cover any vehicles not so engaged and operating. That a rider had been attached to said policy describing the vehicles to be operated by Abbott under his license. That the policy provided that said vehicles should be used only for transportation of passengers for compensa-

tion and would be operated on schedules over authorized routes within the state of Texas, and that said insurance should cover no other use or operation. That all of such indorsements, provisions, and riders were in effect at the time of the accident which resulted in the death of appellees' minor daughter, and that under said policy Abbott could only operate three vehicles at the same time. That on the day of the accident Abbott was operating the maximum of vehicles covered by the policy upon his designated route and there was no occasion for the substitution of any other vehicle or any emergency vehicle in lieu of any of the three regular vehicles actually in operation and under coverage. That during such time Abbott had been using a certain Chrysler sedan, which by the terms of the policy could be used as an emergency substitute for a regular vehicle. That Abbott had used this vehicle mainly for private and family purposes, occasionally calling the same into requisition as a substitute car. That said policy covered said Chrysler sedan only when the same was being used in lieu of one of the regular motor busses in the actual transportation of passengers for hire under approved tariff rates. That on the day and at the time of the accident, Abbott's child was sick in Lubbock and he decided to procure the services of a trained nurse then residing in Dallas, to whom the defendant's son Alton Abbott was engaged to be married. That at the request of Alton Abbott, Ed C. Abbott permitted his son to take the Chrysler sedan to Dallas to bring said nurse to Lubbock, and that Alton Abbott drove said Chrysler car into the western portion of the city of Lubbock to No. 2407 Tenth street, which was more than a mile west of the Lubbock Bus Terminal Station and from any designated or authorized route over which Abbott could operate his busses, and while there the said Alton Abbott backed said Chrysler sedan over the appellees' child, resulting in the death of said child that night. That at said time Alton Abbott was not engaged in the transportation of passengers for hire, did not have any passengers aboard nor any definite arrangement for passengers, but was on a personal mission looking for a friend to accompany him on his trip to Dallas. That in making said trip to Dallas, Alton Abbott drove said automobile over an entirely different route from that designated in the said Abbott's permit.

It is further alleged that Abbott failed and refused to co-operate with the defendant casualty company in its efforts to investigate the accident, and attempted to mislead the defendant's agent into believing that the accident occurred under such circumstances as to render the defendant liable, and openly announced to defendant that, if it pressed the investigation further, and the matter came to a contest, that he (Abbott) would take sides with the plaintiffs. That said threat had been carried into effect by Abbott in flagrant viola-

tion of the obligations of said policy, thereby forfeiting his right, if any, to recover thereon. That defendant casualty company endeavored to get Abbott to execute a nonwaiver agreement under which said company could defend said suit in the name and on behalf of Abbott at its own expense without waiving any of the defenses it might have as to the defendant Abbott. That Abbott refused to execute said nonwaiver agreement and insisted that the defendant company remain as a defendant in said suit, which defendant refused to do. That Abbott took advantage of the enforced absence of the defendant and its counsel and permitted the proceedings against him to result in a judgment. That he did not interpose any proper defenses, and that the issue of coverage by the policy was not adjudicated in said suit No. 3404. That he did not appeal from the final judgment as he should have done.

The defendant casualty company failed to specially plead several other sections discussed in its brief.

By a supplemental petition Williams and wife urged a general demurrer and numerous special exceptions. In addition to the general denial, it is specially alleged that the Chrysler sedan which fatally injured their minor daughter was being operated by Abbott or under his direction and control, in carrying passengers for hire under the Motor Bus Law of the state of Texas, and particularly section 11 thereof. That said casualty company obligated itself to pay all damages which may be recovered against Abbott because of personal injuries arising out of actual operation of a motor bus without regard to the solvency or insolvency of Abbott. That said policy was for the benefit of plaintiffs when they recovered final judgment against Abbott, and that said company agreed that it would not defend plaintiffs' action "after judgment shall have been rendered against Abbott upon any claims for personal injuries growing out of the actual operation of the motor buss covered hereby." That the policy of insurance covered all motor vehicles belonging to Abbott or operated under his direction, whether particularly identified in the policy or not.

Ed C. Abbott answered alleging that he made a bona fide effort in cause No. 3404 to defeat plaintiffs in their action against him. That the bus which ran over and fatally injured the appellees' child was used in his business of carrying passengers for hire and was so used under his direction at the time of the accident.

Section 11 of the Motor Bus Transportation Act, in defining the powers of the railroad commission, provides, with reference to the matter of liability insurance, in substance as follows: That the commission, in granting any certificate to any motor bus company for regularly transported passengers for compensation or hire, shall require the owner or op-

erator to first procure liability insurance from a company licensed to make and issue such policies of insurance in the state of Texas covering each and every motor-propelled vehicle while actually being operated by such applicant. That the terms and conditions of said policies are to be such as to indemnify the applicant against loss by reason of any personal injury to any person other than the as-sured and his employees. That such policy shall furthermore provide that the insurer will pay all judgments which may be recovered against the insured based on claims for loss or damage by reason of personal injury occurring during the term of said policies and arising out of the actual operation of such motor busses, and such policy shall also provide for successive recoveries to the complete exhaustion of the face amount thereof. That such judgment will be paid by the insurer, irrespective of the solvency or insolvency of the insured.

The various stipulations of the policy bearing upon the contentions urged will be hereinafter set forth.

The court submitted to the jury two special issues, in response to which the jury answered, in substance, as follows: Special issue No. 1. That the motor bus which fatally injured plaintiffs' minor daughter was used by Ed C. Abbott in his business of carrying passengers for hire at the time of such injury. Special issue No. 2. That at the time plaintiffs' minor daughter was fatally injured, Alton Abbott had gone to that vicinity for the purpose of receiving a passenger for hire to be transported in said motor bus over the authorized route from Lubbock to Spur or points beyond on said route on one of the authorized schedules. Based upon these findings the court entered judgment for the appellees as prayed for, including all court costs incurred in cause No. 3404 in the original suit. The judgment further recites that, when this judgment is paid, the judgments which plaintiffs recovered against Abbott in cause No. 3404 should be canceled and held for naught, and that, in the cross-action of the casualty company against Abbott, said company recover nothing.

The stipulations and provisions in the policy 'material to the contentions to be considered may be stated as follows:

"American Fidelity & Casualty Company, Inc., Richmond, Va., hereinafter called the Company, does hereby agree to indemnify the Assured * * * against loss imposed by law upon the assured arising or resulting from claims upon the assured for damages by reason of the ownership, maintenance or use of any of the automobiles or motor vehicles as enumerated and described in Statement VI of the schedule of statements only while operated for the purposes stated and subject to the limitations in Statement VIII, to an amount not exceeding the limits here-inafter stated in Statement V of said schedule if such claims are made on account of (1) bodily injury or death suffered by any person or persons other than the assured or his employees excluded herein as the result of an accident occurring while this policy is in force, including such first medical aid as shall be imperative at the time of any such accident * * * and (3) to defend in the name and on behalf of the assured any suit brought against the assured to enforce a claim whether groundless or not of which notices are given to it as hereinafter required, for damages suffered or alleged to have been suffered on account of bodily injuries or death caused in the manner and under the circumstances as herein provided while this policy is in force and to pay all costs taxed against the assured in any legal procedure against the assured which is defended by the Company in accordance with the foregoing agreement and to pay interest accruing upon any judgment rendered in connection therewith on that portion of the judgment not in excess of the policy limit. * * *

"The assured by the acceptance of this policy agrees subject to the following conditions:

"(A) Upon the occurrence of an accident to give immediate written notice thereof to the Company. * * * If thereafter any suit is brought against the assured to enforce such claim, the assured shall immediately forward to the Company at its home office every summons or other process served on him. Whenever requested by the Company, the assured shall aid in securing information, evidence and attendance of witnesses in effecting settlements and in prosecuting appeals and the assured shall at all times render to the Company all possible co-operation and assistance.

"B. The assured shall not voluntarily assume any liability nor interfere in any negotiations for settlement or legal proceedings conducted by the Company on account of any claim nor except at his own cost settle any claim or incur any other expense without the written consent of the Company previously given. * * * The Company reserves the right to settle any such claim or suit brought against the assured.

"C. This policy does not cover any loss arising or resulting from an accident occurring while any of said automobiles are being driven, manipulated or used * * *

"(5) Elsewhere than within the territorial limits as provided or for any purposes other than specified in Statement VIII of this schedule. * * *

"E. The Company shall not be liable to pay any loss nor shall any action be brought against the Company to recover under this policy until a final judgment shall have been recovered against the assured in a court of

last resort after trial of the issue and the insolvency or bankruptcy of the assured shall not release the Company from any payment for which it would otherwise be liable under this policy and if such insolvency or bankruptcy shall occur and an execution on a judgment recovered in a suit against the assured covered by this policy is returned unsatisfied, the judgment creditor shall have a right of action to recover the amount of such judgment against the Company to the same extent that the assured would have had to recover against the Company had the assured paid the judgment. * * *

"K. This policy shall be void * * * if the assured or his agent shall make any attempt to defraud the Company either before or after loss or if the assured shall have incurred any loss during any breach of the statements expressed in the schedule and/or in violation of the conditions of this policy."

In an attempt to have the policy comply with section 11, Acts of 1927, 40th Legislature, page 399, chapter 270 (article 911a, V. A. T. S. pocket part, § 11), the general agent of the company prepared an indorsement which was attached to the policy, which recites that the indorsement is so made and attached for the purpose of making the provisions of the policy conform to the requirements of the act of the Legislature. The provisions and stipulations of said rider or indorsement material to the contentions to be considered are as follows:

"(2) Coverage hereunder applies to all motor vehicles belonging to or under the direction of the assured whether particularly identified in this policy or not, while the same are being used by the assured in the business of carrying passengers for hire and coming within the terms of the statute (above referred to) and this policy covers the legal liability of the named 'assured' for the injury to or death of any person or persons * * * through such operation of such vehicles even though such vehicles may not be specifically identified herein. Anything in the policy to the contrary notwithstanding.

"(3) Anything in the policy to the contrary notwithstanding, it is hereby agreed that the assured will be indemnified against loss by reason of his legal liability at common law or under the Act above mentioned and particularly under Section 11 thereof for any loss or damage by reason of personal injury to any person (other than the assured and his employees) growing out of the actual operation of the motor buss or busses covered under this policy.

"(4) It is also understood, anything in this policy to the contrary notwithstanding, that the insurer herein will pay all damage which may be recovered against the assured based on the claims for loss or damage from personal injury during the term of this policy

arising out of the actual operation by the assured of such motor buss or busses without regard to the solvency or insolvency of the assured.

"(5) No defense which is available to the insurer as against the assured under the provisions of this policy as originally written shall be available to the insurer as against a judgment creditor of the said assured after judgment shall have been rendered against such assured upon any claims for personal injury * * * growing out of the actual operation of the motor buss or busses covered hereby but it is further understood and made a part of this policy that this endorsement shall not affect the contract or relation existing under the policy as originally written between the assured and the insurer."

Statement VIII of the policy hereinbefore referred to is as follows:

"The above described automobiles and motor vehicles are and will be used only for Trans. of passengers for compensation purposes and will be operated as follows: On schedule over authorized routes within the State of Texas, * * * and this insurance covers no other use or operation."

The company offered in evidence a certified copy of the authorized routes and time schedules and authorized fares, the original of which was filed with the railroad commission, which shows that the assured's busses were to leave Lubbock at 7:45 a. m., 12:20 p. m., and 5:00 p. m., and that the authorized route was over state highway 53 from Lubbock to Idalou, Lorenzo, Ralls, Crosbyton, and Dickens City; thence over highway No. 18 to Spur.

■ The evidence shows that the accident which caused the death of the child occurred about a mile from the bus station in Lubbock within the city limits at about 4 o'clock in the afternoon. Under the first two propositions it is contended that the court should have directed a verdict for the company because the accident did not occur on the route used by the bus in going from Lubbock to other towns mentioned in its route list. This issue was not directly submitted to the jury.

By the terms of the original policy, losses arising from accidents occurring while any of the automobiles were driven or used elsewhere than within the "territorial limits," as provided, were not covered by the policy. The "territorial limits" included the town of Lubbock. According to the requirements of the railroad commission, in so far as this record shows, Abbott might have left his bus station over any street within the city limits of Lubbock. Lubbock is part of the territory designated for the operation of his busses, and, as long as he was within the city, he was within his territorial limits. In order to have the policy conform to the provisions of the law, the rider attached protected the assured against any legal liability arising

at common law while his cars were being used for carrying passengers for hire. Statement 8 of the policy provides that the vehicles are to be used only for transportation of passengers for compensation and will be operated over authorized routes within the state of Texas. The testimony shows that the accident occurred in the state of Texas, within the corporate limits of the city of Lubbock, which we understand to be within the territorial limits mentioned in the original policy. The railroad commission has not undertaken to prescribe any street over which Abbott must run his busses within the territorial limits of the city of Lubbock or any other town mentioned on the route, and the city has no authority to do so. 5 Tex. Jur. 626.

As stated in Connell v. Commonwealth Casualty Co., 96 N. J. Law, 510, 115 A. 352: "The vehicle lost none of its characteristics as a jitney bus because it was without passengers at the time, or because its movements were directed to Brooklyn to engage in the passenger service there. Whether at rest or in operation, or in the act of undergoing reparation, on the municipal route or apart from it, it still retained its passenger characteristics as a jitney bus under the policy of insurance, so far as the general public were concerned."

In that case, according to the permit, the jitneys were to be used in the passenger service in Passaic, Garfield, and Lodi, N. J., and vicinity, and the court said: "This limitation must be construed with reference to the fact that the route of passenger service is enlarged from the specific municipalities enumerated, to their 'vicinity'; and we will take judicial notice of the fact that the city of Newark, where the accident happened, is in the 'vicinity' of the places enumerated." And so it is the duty of this court, even in the absence of testimony, to take judicial notice of the fact that No. 2407 Tenth street in the city of Lubbock is within the "territorial limits" of Lubbock where the bus in question was authorized to operate.

Interstate Casualty Co. v. Martin (Tex. Civ. App.) 234 S.W. 710, is not in point for the reason that the jitney which inflicted the fatal injury was shown not to have been used and operated in the regular service at the time. In the instant case, the finding of the jury settles that issue against the appellant.

Devlin v. Herr, 98 N. J. Law, 324, 119 A. 871, is a case in which a jitney bus injured a pedestrian while it was being operated on one of the streets of the city of Newark and somewhat off of the precise route designated by the city. The jitney owner was authorized to operate the jitney in a certain part of the city of Newark, and the policy expressly provided that it did not cover loss while the jitney was being operated outside of the limits of the state in any municipality where consent to operate as a jitney had not been obtained, and the court held that the policy covered the entire city. Sculthorpe v. Commonwealth Casualty Co., 98 N. J. Law, 845, 121 A. 751.

In our opinion the court did not err in refusing to direct a verdict.

The general rule is that a contract of insurance will be construed strictly against the insurer and liberally in favor of the assured, and this rule applies to all provisions relating to a forfeiture of the rights of the assured and to any language in the policy regarding exceptions, warranties, and conditions, and, if said language is not clear, and is ambiguous and uncertain, any doubt as to the meaning thereof will be resolved against the insurer. Western Ind. Co. v. Murray (Tex. Civ. App.) 208 S. W. 696; Id. (Tex. Com. App.) 237 S. W. 1109. The appellant has briefed the case, apparently, under the impression that the policy is one of indemnity rather than a liability policy. The right of the Legislature and the railroad commission to prescribe the terms and provisions of such a policy is not questioned, and, indeed, cannot be. 5 Tex. Jur. 580, 622; Opinion of Justices, 81 N. H. 566, 129 A. 117, 39 A. L. R. 1023; American Indemnity Co. v. Burrows Hardware Co. (Tex. Civ. App.) 191 S.W. 574; 3 Blashfield Cyc. Auto. Law, 2625, § 5; Commercial Union Assur. Co. v. Preston, 115 Tex. 351, 282 S. W. 563, 45 A. L. R. 1016. Our construction of section 11 of the Motor Bus Act is to require the operators of such public service vehicles to procure liability insurance rather than indemnity insurance. The language of the section is, in our opinion, clear upon that point. It provides that the operator shall procure liability insurance from a company licensed to make and issue such insurance policies in the state. That the terms and conditions of such policies are to be such as to indemnify the applicant against loss by reason of any personal injury to any one, and shall, furthermore, provide that the insurer will pay all judgments which may be recovered against the insured motor bus company based on claims for personal injury. The railroad commission order also required liability insurance. 5 Tex. Jur. 661, 662. The cases recognize a distinction between liability policies and indemnity contracts. 5 Cyc. of Ins. Law (Couch) § 1175a discusses at some length this difference, citing numerous cases to the effect that, if the policy requires the assured to pay off the judgment which has been rendered against him before an action can be maintained by him against the insurer, it is an indemnity policy.

According to section E of the policy set out above, the company could not be made liable for any loss, nor could any action be brought against it to recover until a final

judgment had been recovered against the assured in a court of last resort after trial of the issue. This provision, being contrary to the statute and the rider attached by order of the railroad commission, is void. Section 4 of said rider provides that the company will pay all damages which may be recovered against the assured based on a claim for personal injuries. These provisions have the effect of rendering the contract one for liability rather than indemnity. Goerss v. Indemnity Co. of America (Mo. App.) 3 S.W.(2d) 272; 37 A. L. R. 645, note.

Since the Legislature has the unquestioned right to prescribe the nature of the contract and its provisions, and it is clear that the legislative intent in enacting section 11 was that liability insurance should be provided, it follows that all provisions of the policy under consideration at variance with the rules which govern in liability insurance are ineffective and void.

■■ As above stated, the company refused to defend in cause No. 3404, instituted by the plaintiffs herein against Abbott, unless the latter would sign a "nonwaiver" agreement. This agreement was reduced to writing and presented to Abbott for his signature, and recites as follows:

"Whereas, said E. C. Abbott claims that said accident and damages, if any, come within the terms and protection of the aforesaid policy, which contention is not conceded by the American Fidelity & Casualty Company aforesaid:

"Now, therefore, it is agreed by and between the said Abbott and the said American Fidelity & Casualty Company that said company shall by its counsel co-operate and assist in the defense of the above suit for and in the name of the said Ed C. Abbott in consideration of which it is agreed that such defense and co-operation shall be without prejudice to any defenses which the said American Fidelity & Casualty Company may have in regard to the above accident and damages under said policy either as against said F. V. Williams and wife or against said Ed C. Abbott or against any other person."

Abbott refused to sign this agreement, and the company declined to take any part in the defense of Abbott in the original action.

Paragraph 3 of the policy quoted above bound the company absolutely to defend the original action, brought by Williams and wife, in the name and on behalf of Abbott, whether the claim was groundless or not and to pay all costs and interest accruing upon any judgment which might be rendered in that case. 3 Blashfield Cyc. Auto. Law, 2652, § 28. Subdivision B of the policy prohibited Abbott from voluntarily assuming any liability or interfering with any negotiations for settlement or legal proceedings conducted by the company or to incur any expenses (except for first aid relief) without the written consent of the company and further provides: "The company reserves the right to settle any such claim or suit brought against the assured." This stipulation, together with the further provision that Abbott should assist the company at its request, had the effect of vesting in the company the absolute and exclusive right and authority to either settle the case or conduct according to its own ideas any litigation arising under the policy. It was supported by a sufficient consideration. It follows that the so-called "nonwaiver" agreement was an attempt by the company to abrogate this clause of the original contract and avoid performance of a material obligation which rested upon it. Abbott was justified in refusing to sign it. In refusing to defend the action, the company has breached its contract.

"Inconvenience or the cost of compliance, though they might make compliance a hardship, cannot excuse a party from the performance of an absolute and unqualified undertaking to do a thing that is possible and lawful. Parties sui juris bind themselves by their lawful contracts, and courts cannot alter them because they work a hardship. The rights of the parties must be measured by the contract which they themselves made. A contract is not invalid, nor is the obligor therein in any manner discharged from its binding effect, because it turns out to be difficult or burdensome to perform. Nor will unforeseen difficulties, however great, excuse him. The law regards the sanctity of contracts. It requires parties to do what they have agreed to do. If unexpected impediments lie in the way, and a loss must ensue, it leaves the loss where the contract places it. If the parties have made no provision for a dispensation, the law gives none. It does not allow a contract fairly made to be annulled, and it does not permit to be interpolated what the parties themselves have not stipulated. The promisor may not be compelled to perform the undertaking, but he cannot. on account of the hardship of the undertaking, relieve himself from the liability incurred by the contract." 6 R. C. L. 997, § 364.

■ It is a fundamental rule of the law of contracts that, when one party repudiates the agreement and refuses to be bound by material obligations, the other party may accept such repudiation as final and is not required to further regard the obligations imposed upon him thereby. Young v. Walson (Tex. Civ. App.) 140 S. W. 840; 13 C. J. 653, 654, 658, 659; U. S. F. & G. Co. v. Pressler (Tex. Civ. App.) 185 S. W. 326. Upon the refusal of the company to defend, Abbott was forced to assume responsibility and employ attorneys to represent him, and was entitled

to recover from the company his expenses necessarily incurred, together with costs of suit and interest on the judgment. 5 Tex. Jur. 660, 661; 43 A. L. R. 328, 329; 34 A. L. R. 739; Western Indemnity Co. v. Walker-Smith Co. (Tex. Civ. App.) 203 S. W. 93. After having refused to abide by the contract requiring it to undertake the defense of the suit, the company had no right to insist upon the provisions of the policy which required Abbott to appeal from the judgment rendered to a court of last resort. Having repudiated its obligation to defend and thrown the responsibility upon Abbott, he had the right to conduct the litigation in his own way, and, if he, in good faith, thought there was no chance for him to prevail, he could not be required to appeal from the judgment of the trial court. No fraud or collusion with Williams is shown.

The company cannot insist upon that provision with reference to the return of an execution unsatisfied. By the express terms of the policy the company agreed to pay whatever judgment might be rendered against Abbott, whether he was solvent or insolvent. Then why require the return of an execution unsatisfied as a condition precedent to the right of Williams to sue and recover? Under such a stipulation it becomes immaterial whether any execution has ever been issued further than is necessary to keep the judgment alive. It is held that the legal effect of such a stipulation is to give the injured person an independent right to sue regardless of the acts of the assured; such right not being based on subrogation to the right of assured. Metropolitan Casualty Ins. Co. v. Albritton, 214 Ky. 16, 282 S. W. 187. In any event, it did not require Williams and wife to make a bona fide effort to collect the amount of their judgments from Abbott before instituting this action, since the policy was issued for the benefit of injured third parties who had the right to sue upon it. Amer. Auto. Ins. Co. v. Struwe (Tex. Civ. App.) 218 S. W. 534. By the imposed provision of the railroad commission, section 3, Abbott is insured against loss by reason of his legal liability at common law or under the act above mentioned. According to this provision, it becomes immaterial whether the action numbered 3404, prosecuted to final judgment against Abbott, was an effort to recover at common law or under the provisions of the Motor Bus Statute. The company has agreed to indemnify him in either event. In the absence of fraud or collusion, the judgment is conclusive evidence of a legal liability.

It is held in Boyle v. Manufacturers' Liab. Ins. Co., 96 N. J. Law, 380, 115 A. 383, that under statutes like the Texas Motor Bus Act, and under policies like this, whatever legal rights or equities may subsist as between the insurer and the assured by reason of any violation of the terms of the policy cannot affect the rights of the public who claim under the provisions of the policy or statute after such claim has been established by a judgment in a court of competent jurisdiction. See Gillard v. Manufacturers' Cas. Ins. Co., 92 N. J. Law, 141, 104 A. 707; Ariz. Mutual Auto Ins. Co. v. Bernal, 23 Ariz. 276, 203 P. 338. So we think the judgment in cause No. 3404 is conclusive against the company in this case, in so far as the rights of Williams and wife are concerned. The company, by the express provisions of the policy, the statute, and the rules of the railroad commission, is liable to Williams and wife when they have recovered against Abbott, and it should not be permitted to again litigate the right of Williams to recover. Under the rule announced in Crane v. Blum, 56 Tex. 325, and followed in Montgomery v. Huff (Tex. Civ. App.) 11 S.W.(2d) 237, and numerous other cases, judgments should become final, and questions of law as well as questions of fact should pass from the field of strife forever when they have been once settled, and the rule applies as against the parties to the judgment and to real parties in interest, who are liable over to the party cast in the judgment. As said in 34 C. J. 1031, § 1463:

"Where a person who is responsible over, either by operation of law or express contract, to another for whatever may be recovered in a suit against such other, has notice of a suit against the latter and an opportunity to appear and defend, the judgment rendered in the action, if obtained without fraud, will be conclusive on him, whether he appeared or not. In such case the person responsible over is no longer regarded as a stranger because he has the right" (it was the duty of the company in this case) "to appear and defend the action, and has the same means of controverting the claim as if he were a formal party to the record, and it would be unreasonable to permit him to contest the justice of the claim in the suit against himself, after having neglected to show its injustice; in the suit against the person to whom he is responsible over. The rule is an extension of the doctrine that all who are parties to a judicial record are bound by the judgment, and it rests on the same foundation, namely, the necessity that there be an end of litigation."

The company was made a party defendant by Williams, but was dismissed by the action of the court in sustaining its plea in abatement. "The judgment will be conclusive on him so far as concerns the facts of the rendition of the judgment, its amount, and the cause of action, on which it was rendered." See, also, 36 C. J. 1121, 1122; 31 C. J. 460, et seq.

It appears from the original petition of Williams and wife in cause 3404 that they

sued and recovered against Abbott upon his common-law liability. The company was not mentioned in their pleading. The company's plea in abatement was sustained on November 13, 1928, and in January, 1929, Abbott filed his amended answer, which consists of only a general demurrer and a general denial. Abbott's original answer is not in the record, and we have no information as to the issues tendered therein as against the company. This being the condition of the record, we cannot say that the judgment in that case is conclusive against the company upon the issues between it and Abbott. Be that as it may, the company had another day in court when this case was tried, and urged its defenses and its cross-action against Abbott and lost. It requested the court (1) to direct a verdict, (2) to give the three issues requested en masse inquiring as to Abbott's fraud and collusion, (3) his failure to sign the "nonwaiver" agreement, and (4) a request "to submit all controverted issues of fact, if any." All of which were properly refused by the court. All other issues made by its pleading must be considered as waived. Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591; Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

█ Paragraph 5 of the rider, which was attached in deference to the orders of the railroad commission, expressly provides that no defense available to the company as against Abbott, under the policy as originally written, should be available to the company as against Williams and wife after a judgment had been rendered against Abbott for personal injuries. Aside from the authorities above cited, we construe this provision as rendering the judgment in cause No. 3404 conclusive against all of the defenses urged by the company against Williams in this action. Moreover, this provision is in conflict with the last clause of paragraph 5, to the effect that this indorsement shall not affect the contract or relation existing under the policy as originally written between the assured and the insurer. Why the last-mentioned sentence was added is not explained, but in any event it is inconsistent with the first sentence in paragraph 5, and must be held to be void.

█ Appellant complains of the refusal of the court to submit three special issues lettered (a), (b), and (c), inquiring whether Abbott failed and refused to co-operate with the insurance company, whether he refused to sign the nonwaiver agreement, preventing the company from aiding in the defense of the original suit, and whether he colluded with Williams and wife in the former suit and in this suit.

These issues are all written upon the same sheet of paper and signed by appellant's counsel. The general rule is that each issue must be separately submitted, and, where several issues are submitted en masse, and any one or more should not be given, the court is justified in refusing to give any of them, because no obligation rests upon the trial judge to select from a number of issues the ones which should be properly given. The failure of the court to submit issues with reference to these matters was set out in the objections to the court's charge, which is sufficient to require consideration of the error, if any. The record shows without dispute that Abbott did not refuse to co-operate with the insurance company, but failed to do so because the insurance company refused to defend the suit. He could not co-operate unless the company would operate. It further shows that he refused to sign the "nonwaiver" agreement, and we think was justified in doing so. There is no testimony whatever that Abbott colluded with Williams and wife, either in the first action or in this. One of appellant's attorneys says that Abbott threatened to throw in with Williams in the first suit if the company failed to fulfill its obligations, but there is no testimony whatever that he ever executed his threat. He denied making the threat, and an expressed intention to violate the policy in any of its terms without evidence showing that he executed his threat is immaterial and in no way affects the rights of the parties. Veal v. Fire Association of Philadelphia (Tex. Civ. App.) 30 S.W.(2d) 715. There being no evidence tending to support either of the issues, the court did not err in refusing them.

The appellant's objections to the issues submitted are without merit and are overruled.

The defense based upon the allegations that Abbott's son was using the car to make a trip to Dallas to see his fiancée is not supported by the evidence, as that was shown to have been after the fatal accident. Besides, it is waived by the failure to ask its submission to the jury. Nor was the issue as to the automobile which ran over the child being a substitute emergency vehicle submitted.

██ We find no material conflict in the evidence, as it relates to the controlling issues, so it was not necessary for the court to charge as to the burden of proof, but we think he correctly charged that the burden as to the first issue was upon plaintiffs and upon Abbott as to the second. Abbott is not complaining, and appellant cannot complain.

█ It is never necessary for the court to define "preponderance of the evidence." G., H. & S. A. Ry. Co. v. Blumberg (Tex. Civ. App.) 227 S. W. 734, 735; Stine Oil & Gas Co. v. English (Tex. Civ. App.) 185 S. W. 1009.

, In view of the disposition made of the appeal, the court did not err in his rulings as to the testimony as set out in the several bills of exception.

We have not considered the contentions in the order presented in the brief of appellant,

but what we have said disposes of all the material matters urged.

We think the case has been properly decided, and, finding no material error in the record, the judgment is affirmed.