HOUSTON TITLE GUARANTY COMPANY,
Appellant,

v.

Euel B. FONTENOT et ux., Appellees.

No. 13186.

Court of Civil Appeals of Texas.

Houston.

Oct. 6, 1960.

On Filing of Remittitur Oct. 20, 1960.

Rehearings Denied Oct. 27, 1960.

DeLange, Hudspeth & Pitman, C. M. Hudspeth, Sam W. Mintz, Houston, for appellant.

Fountain, Cox, Gaines & Fox, Joyce Cox, Houston, Brantly Harris, Houston, of counsel, for appellees.

WERLEIN, Justice.

This suit was brought by appellees, Euel B. Fontenot, and wife, against appellant, Houston Title Guaranty Company, on an owner's title insurance policy to recover attorney's fees and expenses which they alleged they were required to expend in defending a former boundary suit, Collis v. Fontenot, because of appellant's breach of its covenant in said policy to defend them as the insured in such suit. In a trial before the court, without a jury, judgment was rendered in favor of appellees against appellant in the amount of $1,168.24.

It was stipulated that appellees had acquired title to Lot 7 in Block 29 of Hyde Park Main Addition to the City of Houston and Collis owned Lot 6 in said block. The recorded map shows Lot 7 to be a 50 by 100 foot lot situated at the northeast corner of said block, and Lot 6 to be a 50 by 100 foot lot situated at the northwest corner thereof. The west boundary of Lot 7 is 50 feet in length and is a common boundary with the east boundary of Lot 6.

Immediately following service of the original petition and temporary restraining order in Collis v. Fontenot, restraining the

Fontenots from constructing a cyclone fence along the true west boundary of Lot 7, they employed attorney Reynolds to represent them. At the hearing on the Collises' motion for a temporary injunction on January 4, 1954, the Collises filed their first amended original petition which alleged that the boundary claimed by the plaintiffs was the boundary "as established on the ground and according to long usage, acceptance and agreement, whether the same conforms in exact measurement to the lot and block description or not." Thereafter, appellees employed the firm of Fountain, Cox and Gaines.

The trial court found that the final judgment in Collis v. Fontenot, entered February 20, 1956, and not appealed from, decreed that Mr. and Mrs. Collis take nothing by their suit; it also ordered them to remove the eaves, drain spout, and any other structures encroaching upon the Fontenot property. The court adjudged that Lot 7 owned by the Fontenots had on the ground the full 50 by 100 foot dimensions called for in the official plat by which it was sold and by which title was insured.

The court in the instant case concluded that appellant was required to defend the Collis case unless the pleadings in that case on their face alleged a cause of action entirely excluded from coverage under the terms of the title insurance policy. The court further concluded that there were no "rights of parties in possession" within the policy exclusion.

▇▇▇ The testimony is undisputed that the eaves of the Collis garage and its downspout protruded over the line of Lot 7. It is appellant's contention that such encroachments constituted (1) "discrepancies in area and boundaries which a correct survey would show," and (2) "rights of parties in possession" and hence it was not obligated under the terms of the title policy to defend the Collis suit. Appellees assert that since there was no difference between the 50 by 100 foot dimensions called for in their deed and title policy and the true boundary lines of the lot on the ground, there were no "discrepancies in area and boundaries which a correct survey would show." The trial court so found and concluded. We think its findings and conclusions are supported by the evidence. The discrepancy asserted in Collis v. Fontenot was the discrepancy of 3 feet between the true boundary, which is also the deed boundary, and the oral boundary agreed to by D. Barker, appellees' predecessor in the insured chain of title. In that case the court found that Barker had agreed with Collis in 1947 that the boundary between their two lots was 3 feet east of the true boundary, but held that the oral boundary agreement was not binding because the agreed boundary was not marked on the land. The court, thus, correctly held that an oral boundary agreement to be binding must be executed by the erection of physical monuments on the agreed line or by otherwise marking the line by possession or use to the line. Gulf Oil Corp. v. Marathon Oil Co., 1941, 137 Tex. 59, 152 S.W.2d 711. Obviously a discrepancy between an orally agreed boundary and the true boundary is not a "discrepancy in area or boundaries which a correct survey would show," if the agreed boundary is in no way marked on the ground or monumented. The evidence shows that J. S. Boyles, a licensed state land surveyor, made a survey of Lots 6 and 7 September 3, 1953, which was introduced in evidence by appellees. The survey shows that the true boundary line is located $15/100$ of a foot east of the east wall of the Collis garage, and that no part of the Collis garage extends over such line.

▇▇▇ Appellant asserts, however, that the survey made by Boyles was not a complete survey in that it failed to show that the eaves and downspout of the Collis garage encroached upon Lot 7. The policy in question does not call for a complete survey but a correct survey and refers only to discrepancies in area and boundaries which a correct survey would show. It makes no reference to encroachments such as overhanging eaves. It is our view, there-

fore, that the Boyles survey is a correct survey of the area and boundaries of the lot although it fails to show any protrusion of the Collis eaves across the line. Even if a complete or correct survey would have shown the protrusion of the eaves across the part of the boundary line adjacent to the garage, it still would not have shown a claim to the fee title to a 3 foot strip extending the whole length of the boundary line between Lots 6 and 7. Since a correct survey would not have shown such latter discrepancy, appellant was obligated to defend the suit, as it was obligated under the title policy to defend every suit or proceeding on any claim against or right to said land, or any part thereof.

■ Appellant also contends that a correct survey would have brought about an inquiry which would have resulted in discovery of the contention by Collis that the oral boundary agreement had been entered into, although not monumented on the ground. Such contention is based upon mere speculation. Moreover, we are of the opinion that the word "show" used in the policy cannot be given the strained construction suggested by appellant without violating the settled rule of law that the terms of a policy of insurance are construed liberally in favor of the insured. American Fidelity & Casualty Co. v. Williams, Tex. Civ.App.1930, 34 S.W.2d 396, error ref. We think such rule of construction should be adhered to although the terms of the policy are specified by the State Board of Insurance Commissioners. When appellant voluntarily wrote the policy it accepted such terms and adopted the language prescribed by the Board of Insurance Commissioners.

■ Appellant correctly states that in determining whether the cause of action in Collis v. Fontenot was one which it was required to defend, it is necessary to look to the pleadings filed by Collis and not to the proof adduced at the trial. United States Fidelity & Guaranty Co. v. Baldwin Motor Co., Tex.Com.App., 34 S.W.2d 815; West Texas Stone Co. v. Employers Casual-

ty Co., Tex.Civ.App., 178 S.W.2d 168, ref., w. o. m.; Maryland Casualty Co. v. Moritz, Tex.Civ.App.1940, 138 S.W.2d 1095, 1097, writ ref.

In the Moritz case, in which the Supreme Court unqualifiedly refused a writ, the Court made the following statement:

"But the fact that other grounds of damage against Moritz than those stated in the policy; or liability against others than Moritz for such damages were pleaded is immaterial; if the plaintiffs in that case, in addition to or in connection with other parties and other grounds, also pleaded any grounds against Moritz coming within the terms of the policy. Christian v. Royal Ins. Co., 185 Minn. 180, 240 N. W. 365."

■ In deciding whether the findings of the trial court are supported by the evidence, it is necessary to determine whether Collises' amended petition alleged any grounds of recovery which appellant was required to defend, regardless of whether it contained other grounds which if standing alone appellant would not be required to defend. In their amended petition the Collises alleged for the first time that

"The Plaintiffs seek to have the boundary line remain where it has been established for over twenty years, and the Defendants Fontenot are seeking by force to change the boundary line so as to take in several more feet of land, as well as part of the Plaintiffs' improvements which have been erected and inside the established boundary for many years * * * this suit is brought and the Plaintiffs claim the boundary upon the basis as established upon the ground and according to long usage, acceptance and agreement, whether the same conforms in exact measurement to the lot and block description or not.

" * * * The boundary line as set forth in this petition is *the boundary*

*line which has always been accepted and agreed to between the adjoining owners until a few weeks ago.*

\* \* \* \* \* \*

"The boundary line as set forth in this petition has been the *accepted and agreed line between the said adjoining properties for over twenty-five (25) years* and has been followed in the construction of the improvements on the said respective properties." (Emphasis supplied.)

Upon the hearing for the temporary injunction and the filing of the amended petition it became apparent for the first time that the Collises were claiming that the boundary between Lots 6 and 7 had been changed by an oral agreement between them and appellees' predecessor in title. The agreement was that the boundary line was half way between Collises' garage and Barker's garage which was on Lot 7. Collis testified that if his deed did not cover the 3 feet from his garage east, he was claiming it in addition to what the deed called for. The court, in the present case, found that there was such boundary agreement but it was not marked on the land; that appellees had no actual or constructive notice thereof; that Collis failed to prove adverse possession of the property in dispute for the requisite periods provided by law; and that the location of the true boundary line was located on the ground as established by the Fontenots.

■ Mr. Reynolds advised appellant that upon temporary injunction hearing: "Collis filed amended pleadings wherein he asserted the claim that the boundary line of Lot 7 in Block 29 and Lot 6 in Block 29, of Hyde Park Main Addition, had been altered and changed by an agreement between Collis and Fontenot's predecessor in title." Appellant was thus advised as to the contention being made in the amended pleading. Such agreement, if binding, would have the same effect as if the Fontenot's predecessor, D. Barker, had exe-

cuted a deed to the 3 foot strip in favor of the Collises, since it would have effected a conveyance of land. Gulf Oil Corp. v. Marathon Oil Co., 1941, 137 Tex. 59, 152 S.W.2d 711; Great Plains Oil & Gas Co. v. Foundation Oil Co., 137 Tex. 324, 153 S.W.2d 452; Boothe v. Fuentes, Tex.Civ. App., 262 S.W.2d 754; Farmer v. Kornfuehrer, Tex.Civ.App., 271 S.W.2d 501.

■ While it is true that the amended petition in the Collis case asserts certain grounds of recovery that fall within the policy's exceptions, it also asserts a boundary dispute growing out of an agreement made by appellees' predecessor in title. The pleading does not state whether such agreement was in writing or oral, or whether the boundary was or was not marked on the ground. It does allege enough, however, to have put appellant upon notice that the discrepancy might be one growing out of an unrecorded written boundary agreement or one growing out of an unmonumented oral agreement which would not be disclosed by a correct survey. Having thus been put upon notice, we think it devolved upon appellant to make an investigation to determine whether the suit was one which it was required to defend.

Appellant also contends that the waiver signed by the Fontenots relieved it of any obligation to defend the Collis suit. Such waiver reads as follows:

"We hereby waive inspection by you of such property and accept your policy subject to the rights of the parties in possession and those under whom they hold, if any such are now in possession of the premises upon which you have issued such policy, and take it upon ourselves to inspect such premises and to obtain possession thereof from the present occupant."

■ It is appellant's contention that the inspection which appellees waived would have revealed the downspout which overhung Lot 7 approximately 2 inches and the overhanging eaves which protruded

some 8 inches, and also disclosed the oral boundary agreement covering the 3 foot strip. We think it highly speculative and conjectural whether the inspection which was waived by appellees would have resulted in discovery of the oral boundary agreement. The trial court, as fact finder, was at liberty to reject such contention as it evidently did in entering judgment for appellees. We are also of the opinion that such protrusions could at most have given Collis only an easement which would prevent the servient estate from removing them. They certainly did not amount to possession on the ground of the 3 foot strip constituting the discrepancy in boundary under the oral boundary agreement. Actually appellees were in possession of such strip, taking care of it and keeping it mowed. Even if the waiver relieved appellant from defending the suit as to the overhanging eaves the length of the garage, it did not relieve it from all liability under the policy to defend the suit involving the 3 foot strip the entire distance of the common boundary line.

Appellant next asserts that there is no evidence that appellant was given authority to defend the Collis suit as provided in the title policy or that it refused to defend such suit.

Appellees in effect concede that the appellant was under no duty to defend the cause of action prior to receipt of the letter of January 22, 1954 addressed to it by Attorney Reynolds, stating in part:

"* * * the undersigned attorney represented Mr. Fontenot upon the hearing of temporary injunction. Upon this hearing, Collis filed amended pleadings wherein he asserted the claim that the boundary line * * * had been altered and changed by an agreement between Collis and Fontenot's predecessors in title * * *

"In view of this situation it becomes apparent that the Title Company has some interest in this matter and it is felt that some discussion should be made in order to give the Title Company an opportunity to prepare a defense in said suit and be given authority to defend the same if such is proper and necessary under the terms of the title policy."

Nearly a month later appellant replied to the letter of Mr. Reynolds, stating:

"We call attention that the policy issued is subject to any discrepancies, conflicts or shortages in area or boundary lines or any encroachments or any overlapping of improvements which a correct survey would show.

\* \* \* \* \* \*

"Our client recognizes no liability in this matter in its present form and under the present circumstances. If you desire us to work with you in the suit, we will be willing to do so without cost to your clients provided they will execute a non-waiver agreement in form acceptable to us."

In its reply, appellant recognized no liability although it was notified of the contents of the amended petition and of the claim of the boundary agreement between Collis and appellees' predecessors in title. The offer of appellant to work with appellees' counsel, provided a non-waiver agreement in form acceptable to it was executed, was not an offer to defend. The obligation "to defend" was clearly intended to mean that the title company would relieve the insureds of the duty and expense of having counsel in court, and that such company would assume the responsibility and burden of the defense. An offer merely to help was in effect a refusal to defend, especially in view of the statement that appellant recognized no liability in the matter under the circumstances.

It is our view that the statement that the company recognized no liability in the matter together with the statement of the reasons why it was not liable constituted an anticipatory breach of the con-

tract and excused appellees from further tender of authority. Pollack v. Pollack, Tex.Com.App.1932, 46 S.W.2d 292; American Fidelity & Casualty Co. v. Williams, Tex.Civ.App., 34 S.W.2d 396, 403, error ref.

Moreover, it will be noted that appellant in its offer to work with appellees' counsel, attached a condition not contained in the policy, namely that a non-waiver agreement in form acceptable to the company be furnished. The title policy in question called merely for authority to defend, and did not provide for a non-waiver agreement. In American Fidelity & Casualty Co. v. Williams, supra, the liability insurance policy included an unconditional obligation to defend the insured. Suit was instituted against the insured. The company refused to defend the suit unless the insured would sign a non-waiver agreement. Upon refusal of the insured to sign such an agreement, the company declined to take any part in the defense of the suit. The court held that the so-called non-waiver agreement was an attempt by the company to avoid performance of a material obligation which rested upon it, and that the insured was justified in refusing to sign the instrument, and that in refusing to defend the action the company had breached its contract. The court stated:

> "It is a fundamental rule of the law of contracts that, when one party repudiates the agreement and refuses to be bound by material obligations, the other party may accept such repudiation as final and is not required to further regard the obligations imposed upon him thereby. [citing authorities] Upon the refusal of the company to defend, Abbott was forced to assume responsibility and employ attorneys to represent him, and was entitled to recover from the company his expenses necessarily incurred, together with costs of suit and interest on the judgment."

Appellant finally complains that the court erred in awarding appellees $975 as attor-

ney's fees on the ground that such amount is grossly excessive in view of the undisputed evidence that the fair market value of the 3 foot strip of land involved was only $300.

We are of the opinion that the sum of $75 included in the fee allowed, which appears to be a retainer charged and collected by Mr. Reynolds prior to the time appellant was notified of the lawsuit, is as a matter of law not a charge which appellant should be required to pay. We are further of the opinion that the remaining amount of the fee in the sum of $900 is excessive in the sum of $300. We disagree with appellant, however, that the fee should be reduced to $300. It is our view that a reasonable fee would be $600. Southland Life Ins. Co. v. Norton, Tex. Com.App., 5 S.W.2d 767; Tex.Civ.App., 9 S.W.2d 752. We have arrived at that amount by taking into account not only the value of the 3 foot strip of land but also the nature of the litigation, the interests at stake, the capacity and fitness of the attorneys for the required work, the services and labor rendered by them, the amount of time required in preparation and trial of the case, and the benefit derived by appellees from the litigation especially in the preservation of the integrity of their home and of a normal sized corner lot. International & G. N. R. Co. v. Clark, 1891, 81 Tex. 48, 16 S.W. 631; Texas Life Ins. Co. v. Hatch, Tex.Civ.App., 167 S.W.2d 802, ref., w. o. m.

If appellees will within fifteen days from the filing of this opinion file a remittitur of $375, the judgment of the trial court will be reformed accordingly, and as reformed will be affirmed; otherwise the judgment of the trial court will be reversed and the cause remanded.

### On Filing of Remittitur

On October 6, 1960, we indicated by an opinion in writing that if appellees would file a remittitur of $375 within fifteen days of such date, the judgment of the trial court would be reformed, and as re-

formed would ·be·affirmed; otherwise the judgment of the trial court would be reversed and the cause remanded. Appellees have filed the suggested remittitur of $375.

Accordingly, as of this date, the judgment of the trial court is reformed by deducting the amount of $375 from the judgment recovered by appellees, and, as so reformed, is affirmed.

One-third of the costs of the present appeal will be taxed against appellees, and two-thirds against the appellant, Houston Title Guaranty Company.

Motion for rehearing may be filed by either party within fifteen days after this date.