670 So.2d 1115 (1996)
AMERICAN TITLE INSURANCE COMPANY, Appellant,
v.
Robert M. CARTER a/k/a Michael Carter, et al., Appellees.
No. 95-2233.
District Court of Appeal of Florida, Fifth District.
March 29, 1996.
Michael J. Appleton of Marlowe, Appleton, Tauscher & Salzman, P.A., Winter Park, for Appellant.
Patrick C. Crowell of Patrick C. Crowell, P.A., Orlando, for Appellees.
GOSHORN, Judge.
American Title Insurance Company ("American Title") appeals from the nonfinal order granting partial summary judgment in favor of Robert and Elizabeth Carter ("the Carters") arising out of a third party complaint the Carters filed against American Title after American Title refused to defend them in a boundary dispute.[1] The trial court found that American Title had a duty to defend the Carters under the title insurance policy that American Title had issued to the Carters. We reverse.
The facts of this case are generally uncontested. In June of 1987, the Carters purchased title insurance from American Title when they bought a parcel of land located in the southwest quarter of the southwest quarter of section 20, township 21 south, range 30 east. The insurance policy that American Title issued to the Carters states in pertinent part:
SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, AMERICAN TITLE INSURANCE *1116 COMPANY ... insures ... against loss or damage ... and costs, attorney's fees and expenses which the Company may become obligated to pay hereunder, sustained or incurred by the insured by reason of:
1. Title to the estate or interest described in Schedule A[2] being vested otherwise than as stated therein;
2. Any defect in or lien or encumbrance on such title;
* * * * * *
4. Unmarketability of such title.
* * * * * *
CONDITIONS AND STIPULATIONS
* * * * * *
3. DEFENSE AND PROSECUTION OF ACTIONS....
(a) The Company, at its own cost and without undue delay, shall provide for the defense of an insured in all litigation consisting of actions or proceedings commenced against such insured ... to the extent that such litigation is founded upon an alleged defect, lien, encumbrance, or other matter insured against by this policy.
Schedule B of the policy delineates certain types of losses that are excluded from coverage. It states in relevant part:
This policy does not insure against loss or damage by reason of the following:
* * * * * *
3. Any encroachments, easements, measurements, variations in area or content, party walls or other facts which a correct survey of the premises would show.
After purchasing the property, the Carters had Robert Gabioud, a professional land surveyor, perform a boundary survey. Based on Gabioud's survey, the Carters erected a fence on what they believed to be their eastern boundary line. In 1991, the Carters' neighbor to the east, Eugene Calabrese ("Calabrese") had William Hart perform a survey. Hart concluded that the Carters' fence encroached 26.5 feet on Calabrese's property.
When the Carters refused to move their fence, Calabrese filed a complaint against the Carters alleging encroachment and seeking to recover possession of the land enclosed by the fence, as well as damages, costs, and attorney's fees. The Carters made a formal demand on American Title to defend them in Calabrese's ejectment action. American Title refused to defend them, and the Carters filed a third party complaint against their predecessors in interest and American Title. In Count III of their complaint, the Carters alleged that American Title insured them against loss and damage for circumstances as alleged in Calabrese's complaint and that American Title had breached the title insurance policy by failing to defend them in Calabrese's suit.
American Title answered, stating that it had denied coverage because Calabrese's lawsuit was not a covered claim under the policy for two reasons. First, Calabrese's claim did not seek to recover any lands described in the Carter's deed, and alternatively, the claim was not covered because of the survey exception in Schedule B of the policy. Thereafter, both parties filed motions for summary judgment on the issue of American Title's duty to defend the Carters in the ejectment action.
On appeal, American Title asserts that the trial court's order should be reversed for two reasons. First, American Title contends that the lawsuit Calabrese filed is not a covered claim under the Carters' title insurance policy. Second, it asserts that the trial court improperly based its order on an estoppel theory, which was beyond the scope of the pleadings.

*1117 COVERAGE

American Title argues that the trial court erred in granting summary judgment for the Carters because the outcome of the case does not affect the title to the Carters' property. American Title points out that it is undisputed that the legal descriptions of the Carters' and Calabrese's property do not overlap: Calabrese's parcel is bounded on the west by the quarter/quarter section line separating the southeast quarter of the southwest quarter, while the Carters' parcel is bounded by the southwest quarter of the southwest quarter. In essence, the quarter/quarter section line is the common boundary between the two parcels; the question in Calabrese's suit is where "on the ground" that line should be drawn. American Title maintains that such an issue does not pertain to title, but is merely a boundary dispute not covered in the policy.
While no Florida case law is on point, we find Walker Rogge, Inc. v. Chelsea Title & Guaranty Co., 116 N.J. 517, 562 A.2d 208 (1989), disagreed with on other grounds by Bank of California, N.A. v. First Am. Title Ins. Co., 826 P.2d 1126 (Alaska 1992) instructive. In that case, the plaintiff contracted to purchase land comprising "19 acres, more or less." Id. 562 A.2d at 210. The price was based on the number of acres and was to be adjusted in accordance with a survey. The plaintiff had purchased a title insurance policy that excluded from coverage, "[e]ncroachments, overlaps, boundary line disputes and other matters which could be disclosed by an accurate survey and inspection of the premises." Id. at 212. Although the purchaser ordered a survey, when he had not received it by the closing, the purchaser relied on an earlier survey. Six years later, a survey revealed that the land was actually only 12.43 acres. The purchaser then sued the title insurance company and the original surveyor, alleging, inter alia, that the shortage in acreage "was an insurable loss under the policy...." Id. at 213. The trial court found that title to the property had not vested as described in the policy, that the shortage constituted a defect in title, and that the title was unmarketable. Although the appellate court affirmed that determination, the New Jersey Supreme Court reversed. The court reasoned:
From a search of relevant public records, a title company cannot ascertain the risks that an accurate survey would disclose. It is for this reason that the title company puts that risk on the insured, who can control it either by obtaining a survey or arranging for the elimination of the survey exception. Thus, the very purpose of a survey exception is to exclude from coverage errors that would be revealed not by a search of the public records, but by an accurate survey.
Id. at 217.
In the present case, like the plaintiff in Walker Rogge, the defect about which the Carters are complaining would not have been disclosed by the public records. In addition, like the deed to the conveyed property in Walker Rogge, the legal description in the Carters' deed does not delineate the quantity of land being conveyed. We agree with the court in Walker Rogge that title insurance is not a valid substitute for a survey. If the Carters wished to insure against a defect that a correct survey would show, they could have sought to have the exclusion deleted before buying the policy; essentially, the Carters are asking the court to write them an insurance policy superior to the one they purchased. Such action would be improper. See Walker Rogge, 562 A.2d at 214 ("[C]ourts should not write for the insured a better policy of insurance than the one purchased.").[3]

ESTOPPEL
The trial court also found that the Carters relied on American Title to advise them about the sufficiency of the title policy, and therefore, American Title was estopped from relying on the policy's survey exception. *1118 However, both parties' summary judgment motions specifically state that the issue for the court's determination was whether coverage existed under the Carters' title policy. We agree with American Title that the trial court erred in considering the Carters' estoppel theory because it was not raised in the pleadings. See Hemisphere Nat. Bank v. Goudie, 504 So.2d 785 (Fla. 3d DCA 1987); Reina v. Gingerale Corp., 472 So.2d 530 (Fla. 3d DCA 1985); Accurate Metal Finishing Corp. v. Carmel, 254 So.2d 556, 557 (Fla. 3d DCA 1971); Couchman v. Goodbody & Co., 231 So.2d 842 (Fla. 4th DCA 1970); Turf Express, Inc. v. Palmer, 209 So.2d 461 (Fla. 3d DCA 1968); cf. Playa Del Mar Ass'n, Inc. v. Florida Power & Light Co., 481 So.2d 943, 944 (Fla. 4th DCA 1985) (finding that "it was error to enter judgment based upon `release' when that affirmative defense had never been asserted in a pleading"), approved sub nom by Coral Ridge Properties, Inc. v. Playa Del Mar Ass'n, Inc., 505 So.2d 414 (Fla. 1987). Accordingly, we reverse the summary judgment and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED with INSTRUCTIONS.
W. SHARP and GRIFFIN, JJ., concur.
NOTES
[1] We have jurisdiction. See Fla.R.App.P. 9.130(a)(3)(c).
[2] Schedule A of the policy provides in relevant part:

1. Name of Insured:
ROBERT M. CARTER AND ELIZABETH K. CARTER, his wife
2. The estate or interest in the land described herein and which is covered by the policy is: fee simple
3. The estate or interest referred to herein is at date of policy vested in:
ROBERT M. CARTER AND ELIZABETH K. CARTER, his wife
4. The land referred to in this policy is situated in the County of Orange, State of Florida....
[3] The cases from outside of this jurisdiction that the Carters have relied upon are not dispositive because none concerned the true location of the original boundary line separating adjoining parcels. See McMinn v. Damurjian, 105 N.J.Super. 132, 251 A.2d 310 (1969); Lawyers Title Ins. Corp. v. McKee, 354 S.W.2d 401 (Tex.App.1962); Houston Title Guar. Co. v. Fontenot, 339 S.W.2d 347 (Tex.App.1960).