This suit was brought by the appellee, Riordan, in trespass to try title to recover a tract of land described by metes and bounds and claimed by him as the eastern part of survey No. 143, out of the San Elizario grant in El Paso county, according to the Wingo map of said Grant. Survey 144 of the San Elizario grant, situate east of and adjoining 143, is owned by appellant, Stahlman. In effect the suit was to fix the boundary line between the two surveys.
The undisputed evidence shows that the two surveys are part of a tier of surveys numbered from 129 to 145. These surveys *Page 727 
were made by A. Q. Wingo in the winter of 1881-82 in a division of the San Elizario land, by the corporation of that name, among its inhabitants. The base line of the surveys was the old Texas Pacific Railroad grade. It is impossible to locate on the ground any of the lines of the surveys intervening between 129 and 144, except by course and distance because all of the original land marks have disappeared. But the southwest corner of survey 129 on the base line at the west end of the tier and its westerly line can be definitely located by the Hawkins house called for in the Wingo field notes. The southeast corner of survey 144 on the east end of the tier and its easterly line can be definitely located by drain box under the railroad as called for in the Wingo field notes. The tier of surveys are tied together, as they call for the lines and corners of the adjoining surveys. The surveys were located by Wingo as one piece of work.
The length of the Texas Pacific base line according to the Wingo field notes is 5,322 varas, but by actual measurement between the fixed corners of 129 and 144 it is shown to be 5,489.5 varas, making an excess of 167.5 varas. The court rendered judgment for the appellee which fixed the easterly line of plaintiff's survey 143 (also the westerly line of defendant's survey 144) at a point on the base line westerly from what it would be located by following the course and distance call from the drain box under the railroad. The point at which the line was fixed by the court gave to survey 144 its proportionate share of the 167.5 varas excess. The defendant, Stahlman, appeals.
Preliminary to a discussion of any of the assignments and as a predicate to our ruling upon some of them, we hold that the action of the court in fixing the disputed boundary line so as to prorate between the plaintiff and defendant the excess distance of the base line was proper. The facts in this case bring it within the rule announced in Johnson v. Knippa, 127 S.W. 905, where the same action was taken.
Under the first four assignments appellant contends that the owners of the other sections, from 129 to 144, were necessary parties to this suit because each of said surveys was entitled to its proportionate share of the excess, and therefore such owners interested to such an extent as necessarily required their joinder in the suit.
The court has simply undertaken to fix the boundary line between survey 143, owned by plaintiff, and survey 144, owned by the defendant. The interest and rights of the owners of the other surveys are not necessarily affected by this adjudication, and they are in no wise precluded or bound thereby.
Appellant invokes the rule applying in partition suits which requires that all joint owners be made parties to the proceeding but this rule has no application to the present case.
We hold that the owners of the other surveys were not necessary parties to this suit.
Under the fifth, sixth, and seventh assignments three propositions are advanced which raise two questions. The first and third propositions relate to the admissibility of certain probate orders made in the estate of Juan Armendariz wherein it was recited that the wife and daughter of Armendariz were his only heirs at law. One of the muniments in the title of the appellee was a deed from the administrator of the estate of Juan Armendariz. The appellant concedes that the proceedings were admissible as a muniment of title, but seems to base his objection upon the ground that the recital as to the heirship of the wife and daughter were not binding upon him. It being conceded that the proceedings were admissible as a muniment of title, there was no error in admitting the same. By proper action the appellant, if he so desired, could have had the evidence limited to the purpose for which he conceded it to be admissible. But in any event the recitals as to heirship in no wise harmed the appellant because he admitted that the wife and daughter were the heirs of Juan Armendariz and one of the links in the appellee's chain of title is a deed from such heirs. Upon any view of the case, therefore, the admission of these probate proceedings presents no reversible error.
The second proposition under these assignments is that there was no proof that the wife and daughter of Juan Armendariz were his only heirs. There is an agreement in the statement of facts that they are the heirs of Juan Armendariz, who died without a will.
The eighth and ninth assignments are controlled by the preliminary ruling in this case to the effect that under the undisputed evidence in this case the court properly prorated the excess distance on the base line of the surveys as shown by the actual measurement. In this connection it seems to be contended here, as well as under other assignments, that the call for the Hawkins house whereby the east line of survey 129 is definitely fixed on the ground is the controlling call and that from the east line of 129 the corners and lines of the plaintiff's survey and the other surveys to the east should be located by taking the course and distance calls from survey 129 and ignoring entirely the call for the drain box under the railroad track called for in the field notes of survey 144. If this were done the excess area of the tier of surveys would all be made a part of survey 144. But the southeast corner and east line of 144 are fixed and established by the drain box. In locating a block of surveys between two fixed and established points it is immaterial which point is taken as the beginning corner, and the calls may be *Page 728 
reversed. According to the field notes Wingo surveyed 144 before 143, and as 144 corners with reference to the drain box, according to appellant's logic, the conclusion would be that Wingo in fact established the southwesterly corner of 144 only 300 varas westerly from its established southeasterly corner instead of 310 varas as fixed by the judgment. Under the facts in this case there was nothing for the court to do except to follow the rule laid down in Johnson v. Knippa, supra, and prorate the excess.
The tenth, eleventh, twelfth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, and twenty-first assignments complain of the refusal to submit certain issues. In this there was no error for the reason that such issues relate to mixed questions of law and fact.
The thirteenth, fourteenth, and fifteenth assignments complain of the refusal to submit the issue of whether the landmarks called for in the field notes of the surveys intervening between 129 and 144 were obliterated. In this there was no error for the reason that the undisputed evidence shows that such landmarks were obliterated, and appellant in his brief, at page 18, so admits.
Under the twenty-second and twenty-third assignments complaint is made of the refusal to submit the question of whether the map made by Wingo of the subdivision of the San Elizario lands was made before the subdivisions were surveyed on the ground, and whether the survey was an office survey or a survey actually made on the ground. These issues were immaterial, for it makes no difference what the facts were in this connection, as the lines of the intervening surveys cannot be located under the evidence in this case except in the manner adopted by the trial court.
Survey No. 142 had a fence upon it known as the Van Every fence. It is contended by the appellant that the plaintiff lead him to believe that this fence marked the westerly boundary line of survey 143, and that he was thereby estopped from claiming that it did not mark the westerly boundary of 143, and from claiming that his line extended more than 300 varas easterly from said fence. The court submitted special issues with reference to the question of estoppel, and the jury found that the plaintiff did not, by words, acts, or silence, induce the defendant to believe that said fence marked his westerly boundary line, and further found that defendant knew that such fence was not in fact upon the westerly line of survey 143, or he could, by reasonable diligence, have learned that it was not.
There are other assignments which relate to the question of estoppel; assignments complaining of rulings upon evidence and other matters. All have been considered and are regarded as without merit. The rulings made, we believe, control all material questions in the case.
Finding no error, the judgment is affirmed.
 On Rehearing.
Appellant's motion for rehearing has been carefully considered, but we see no reason to recede from the view that the judgment should be affirmed. It may be well, however, to state more fully our views.
The principle upon which this case was decided has in some cases been expressed as follows:
"On a line of the same survey between remote corners, the whole length of which line is found to be variant from the length called for, in re-establishing lost intermediate monuments, as marking subdivisional tracts, we are not permitted to presume that the variance arose from defective survey of any part, but must conclude, in the absence of circumstances showing the contrary, that it arose from the imperfect measurement of the whole line, and distribute such variance between the several subdivisions of such line, in proportion to their respective lengths." Moreland v. Page, 2 Iowa 139; Newcomb v. Lewis, 31 Iowa 488; McAlpine v. Reicheneker, 27 Kan. 257; Miller v. Topeka Land Co.,44 Kan. 354. 24 P. 420; Quinnin v. Reimers, 46 Mich. 605, 10 N.W. 35; Brooks v. Stanley, 66 Neb. 826, 92 N.W. 1013; Jones v. Kimble, 19 Wis. 429.
In this connection see the following Texas cases: Welder v. Carroll,29 Tex. 317; Sellers v. Reed, 46 Tex. 377; Ware v. McQuinn,7 Tex. Civ. App. 107, 26 S.W. 126; Knippa v. Umlang, 27 S.W. 915; Austin v. Espuela Land, etc., Co., 107 S.W. 1138; Johnson v. Knippa, 127 S.W. 905.
It is true there are limitations upon and exceptions to this rule, as shown in a note upon the subject in Ann.Cas. 1912A, p. 1273, but they have no application here.
The town of San Elizario was incorporated in 1880. The land in controversy was a part of a grant made to the inhabitants of San Elizario as per patent dated March 8, 1873. Mr. Garcia, a witness for appellant, testified that he was the first mayor of San Elizario and held that position three or four years. According to his testimony, the town of San Elizario decided to divide its unapportioned land among its inhabitants and passed an ordinance to that effect. Mr. Wingo was the surveyor employed to survey the tracts set aside to the various inhabitants. Wingo was the man who surveyed the various parcels and platted same upon the map.
The town of San Elizario conveyed survey 143 to Juan De Aro by deed dated March 10, 1882, reciting a consideration of $1. The appellee claim's under De Aro.
The town of San Elizario conveyed survey 144 to Benito Caballero by deed dated March 4, 1882, reciting a consideration of $1. Appellant claims under Caballero. *Page 729 
These conveyances apparently were made in pursuance of the distribution plan.
It is shown by the Wingo map that the tier of surveys numbered 129 to 144, both inclusive, are contiguous to each other. The testimony of appellant's witness Owen also shows this fact. The undisputed testimony of this witness further shows that lines and corners of the interior surveys cannot be located except by running course and distance, and that, beginning at the established corner of 129 and running the course and distance calls to the established corner of 144, it appears by actual measurement that the length of the Texas Pacific base line is 167.5 varas greater than the field notes called for. We reaffirm our original ruling that under the undisputed evidence the established corner of 129 is not to be given controlling effect over the equally well-established corner of 144, and that the lines and corners of the surveys east of 129 are not to be located by beginning at said corner of 129 and then run course and distance, thereby giving all of the excess to survey 144. This holding does not violate the rule that the footsteps of the surveyor must be followed in locating surveys. There was no issue in that respect to submit to the jury, for under the evidence it was impossible to follow his footsteps, and the excess had to be apportioned among all of the surveys under the rule announced.
Under the thirteenth, fourteenth, and fifteenth assignments it is asserted that the judgment gave appellant only 10 varas of the excess and 80.7 varas to appellee. This is not the effect of the judgment. It establishes the boundary between 144 and 143, a distance of 310 varas westerly from the east line of 144 instead of 300 varas, as called for in the original field notes of 144. It gives to 144 a width of 10 varas more than originally called for. The exact amount of the excess upon the base line to which appellant is entitled is 9.4 varas (800/5322 of 167.5 varas = 9.4 varas). Thus the judgment gives appellant 8/10 of a vara more than he is entitled to. The judgment does not undertake to establish the westerly line of 143. The location of that line concerns only the appellee and the owner of 142. It does not concern appellant at all.
Appellant in his motion vigorously attacks the ruling that the owners of the other surveys were not necessary parties to this suit. He invokes the rule in partition suits which requires the joinder of all the owners. His insistence is that, since the excess is to be apportioned, it is in effect a partition, and all interested in the apportionment must be joined as parties.
In partition the owners have undivided interests. These interests are to be established and set aside in severalty. But we think the interests in the excess of the owners of the other surveys is not undivided, but is owned by them in severalty. Their proportionate shares are dependent upon the width of their respective tracts, and therefore variable. The data by which the lines of the respective tracts may be located is a mere matter of mathematical calculation. The fact that they are variable does militate against the view that they own in severalty, and that the only issue between the various owners is that of boundary. In our conclusion upon the subject of parties we are fortified by the general rules of law as to necessary parties. The rule is that all persons interested in the object of a suit and whose rights will be directly affected by the decree must be made parties. The object of the present suit is simply to establish the boundary between surveys 143 and 144. The owners of the other surveys are not interested in that subject. In the establishment of the boundaries of their surveys the judgment rendered in this case is not binding upon them and can have no controlling effect whatever. Their rights are In no wise affected by it. So upon any view of the matter we do not regard these other owners as necessary parties to this suit.
In the original opinion it was said:
"The point at which the line was fixed by the court gave to survey 129 its proportionate share of the 167.5 varas excess."
This reference to survey 129 was erroneous. It was intended to refer to survey 144. We have corrected the original opinion in the particular indicated.
The motion for rehearing is overruled.