GREAT PLAINS OIL & GAS COMPANY ET AL V. FOUNDATION OIL COMPANY ET AL.

No. 7782. Decided June 4, 1941.
Rehearing overruled July 16, 1941.
(153 S. W., 2d Series, 452.)

*Wynne & Wynne, Angus G. Wynne,* and *Henry H. Harbour,* all of Longview, for plaintiff in error.

It appearing that the block of land about which this controversy arose was a block in a system of surveys made in the partition of the Anderson share of the Christian Estate and its location should not have been fixed as though it were a separate and individual survey, but should have been located by taking into consideration all of the blocks of said partition, giving to each its proper location. Beck v. Gulf Prod. Co., 113 S. W. (2d) 258; Dawson v. Hickman, 95 S. W. (2d) 1319; Thompson v. Langdon, 87 Texas 254; Braumiller v. Burke, 111 Texas 145, 230 S. W. 400.

*Turner, Rodgers & Winn,* of Dallas, for defendants in error.

The field notes in the block in controversy being complete within themselves and including calls for fixed and known

objects to mark its northeast and southwest corners, it follows as a matter of law that the northwest and southwest corners of said block must be located at their called distance 243.2 varas west of said fixed eastern corners. Petty v. Paggi Bros. Oil Co., 254 S. W. 565; Standefer v. Vaughn, 219 S. W. 484; Phillips Petroleum Co. v. State, 63 S. W. (2d) 737.

MR. JUDGE SMEDLEY of the Commission of Appeals delivered the opinion for the Supreme Court.

The suit is by plaintiffs in error, Great Plains Oil & Gas Company and others, against defendants in error, Foundation Oil Company and others, for the title and possession of a tract of land in Gregg County containing approximately 16.5 acres, the area actually in controversy, however, being approximately 3 acres and the purpose of the suit being to determine the true location of the boundary line between tract G owned by plaintiffs in error and tract F lying west of tract G and owned by defendants in error. The trial court instructed the jury to return a verdict for plaintiffs in error and rendered judgment in their favor for the tract of land for which they sued. The Court of Civil Appeals reversed the trial court's judgment and rendered judgment which so fixed the boundary line as to award the 3 acre tract to defendants in error. 141 S. W. (2d) 969.

B. C. Christian, Sr., was the father of seven children, who upon his death inherited from him 665 acres of land in the G. W. Hooper survey in Gregg County. At the time partition of the land was made by deed in 1930 one of the heirs, Paulina Anderson, had died, leaving seven children to inherit her portion. W. E. Jones, county surveyor, was employed to survey the land into blocks and to prepare a deed to be executed by the children of B. C. Christian, Sr., and the children of Paulina Anderson, to partition the land among them. Jones first surveyed on the ground the outside lines of the entire 665 acres and then divided the entire area into blocks numbered from 1 to 16, actually surveying on the ground many of the lines and marking most of the corners of the blocks. Blocks 14, 15 and 16, believed to contain a total of 95 acres, were to be set aside to Paulina Anderson's children.

Before the partition deed was executed, however, it was decided to divide Blocks 14, 15 and 16 into seven tracts, each containing 13-4/7th acres, one tract for each of Paulina Ander-

son's children. Thereupon Jones in his office divided Blocks 14, 15 and 16 into seven tracts and prepared field notes for each of said tracts, designating them A, B, C, D, E, F and G, and describing each as containing 13-4/7th acres, or 1/7th of 95 acres. Block B lies immediately north of Block A and is described in its field notes as beginning at the southwest corner of the J. M. Christian 49 acre tract (Block 12) which is a marked and undisputed corner; thence E. with the S. line of said J. M. Christian tract 334.5 varas to E. E. Anderson's NW corner (Block C) ; thence S. with his W. line 221.9 varas; thence W. 334.5 varas; thence N. 221.9 varas to the place of beginning. Block C (E. E. Anderson's tract) is described as beginning at the NE corner of Block B; thence E. with the S. line of the J. M. Christian tract 243.2 varas to the NW corner of Annie Boyd's tract (Block D) ; thence S. with her W. line 316.8 varas to a corner in the N. line of Block 11; thence W. with the N. line of block 11 243.2 varas to E. E. Anderson's SE corner; thence N. with his east line 316.8 varas to the place of beginning. In like manner the field notes of Blocks D, E and F describe each of said blocks as beginning at the northeast corner of the block immediately to its west; thence E. with the S. line of Block 12 or Block 13 243.2 varas to the N W corner of the block immediately to its east; thence S. with the W. line of said block 316.8 varas to its southwest corner; thence W. 243.2 varas to the SE corner of the block immediately to its west; thence N. with the east line of said block 316.8 varas to the place of beginning. Block G is described in its field notes as beginning at the northeast corner of Lillie Willis' tract (Block F) in the S. line of Block 13; thence E. with the S. line of said block 243.2 varas to a NW corner of Block 10; thence S. with the W. line of Block 10 316.8 varas; thence W. with a part of said Block 10 243.2 varas to Lillie Willis' SE corner; thence N. with her east line 316.8 varas to the beginning.

The heirs of B. C. Christian, Sr., including the seven children of Paulina Anderson, executed a deed dated November 28, 1930, by which the land that had been owned by B. C. Christian, Sr., the 665 acre tract, was partitioned among the parties to the deed in accordance with the field notes prepared by W. E. Jones, Block F, as above described, being conveyed to Lillie Willis, and Block G as above described to E. A. Anderson.

W. E. Jones, who was called as a witness by plaintiffs in error, testified that when the partition deed was executed he had not surveyed on the ground any of the lines between Blocks A, B, C, D, E, F and G, and had not marked any of the corners of said blocks on their dividing lines. He testified that if there was an excess distance between the west line of Block 14 (the west line of Block B) and the east line of Block 16 (the east line of Block G) he did not know it at the time he prepared the field notes for Blocks A, B, C, D, E, F and G.

It was proven by undisputed evidence that Jones marked the southwest corner of Block 12 (which is the northwest corner of Block B) and the northwest corner of Block 10 (which is the northeast corner of Block G). These two original corners thus marked by Jones were identified by the surveyors who testified. There is no dispute as to their location.

The controversy herein is caused by the existence of an excess distance on the ground between the west line of Block B and the east line of Block G. The total distance between the NW corner of Block B and the NE corner of Block G is, according to the field notes of Blocks B, C, D, E, F and G, 1550.5 varas. Hackney, a surveyor and witness for plaintiffs in error, testified that the distance on the ground between the said two points is 1602.9 varas, an excess of 52.4 varas. Grothaus, a surveyor and witness for defendants in error, found the distance on the ground between the same points to be 1605.4 varas, an excess of 54.9 varas.

Plaintiffs in error contend that the correct method of determining the true location of the boundary line between Blocks F and G is to begin at the established and undisputed northwest corner of Block B and construct each of the several blocks according to the calls in the field notes east from that point, giving to each block the width east and west called for in the field notes. When this is done and the north line of Block G is extended beyond its field note distance in order to reach the marked northwest corner of Block 10, all the excess distance between the northwest corner of Block B and northeast corner of Block G and all of the excess acreage between the west line of Block B and the east line of Block G are allotted to Block G. Defendants in error, in their brief filed in this court, take the position that Block G, owned by plaintiffs in error and for which they sue, must be constructed from its own known and undisputed northeast and southeast corner and

its north and south lines extended no farther from those corners than the distances called for in the field notes. It is our opinion that neither of the two theories is correct, but that the case is under the undisputed facts a proper one for the apportionment of the excess among the several blocks. Welder v. Carroll, 29 Texas 317; Sellers v. Reed, 46 Texas 377; Johnson v. Knippa, 127 S. W. 905; Stahlman v. Riordan, 227 S. W. 726; Turner v. Smith, 122 Texas 338, 361, 61 S. W. (2d) 792; Stanolind Oil & Gas Co. v. State, 129 Texas 547, 557-558, 101 S. W. (2d) 801, 104 S. W. (2d) 1.

The surveyor, in preparing the field notes and the deed, intended to divide the tract, believed to contain 95 acres and substantially a parallelogram, into seven blocks, each containing 13-4/7th acres and tied the one block to the other; and the parties who executed the partition deed intended it to have the effect of partitioning all of the said tract among the seven children of Paulina Anderson, allotting to each one of them one block as described in the field notes incorporated in the deed, each block tied the one to the other and containing a one-seventh part of the entire acreage included within the whole tract. When the field notes and the deed were prepared and the deed executed neither the surveyor nor the parties to the deed knew of the existence of the excess distance on the ground between the northwest corner and the northeast corner of the whole tract nor of the excess acreage within the tract. As has been said, none of the dividing lines between the seven blocks A, B, C, D, E, F and G was surveyed or marked. Such being the facts, the intention of the parties is substantially and almost exactly fulfilled when the location of the boundary lines between the blocks is determined by prorating the excess among the blocks according to their respective widths as called for in their field notes.

By the use of no other method of construction could the intention of the parties be so nearly or so fairly accomplished. If the method upon which plaintiffs in error insist were adopted, all of the excess distance east and west and all of the excess acreage would be allotted to Block G. If the method for which defendants in error contend were followed, the excess distance and excess acreage would be given all to Block F or to some block or blocks other than G or the excess acreage would remain somewhere west of Block G and not partitioned.

Defendants in error, in argument against the application

of rule of apportionment or proration, insist that the rule is a rule of equity, to be applied only as a last resort. It is true that the opinion in Gulf Oil Corporation v. Timms, 116 S. W. (2d) 940 (application for writ of error refused) contains the statement that "the rule is to be applied only as a last resort." The quoted phrase, however, is only a part of a sentence which continues with the statement "and has no application where the dividing line has been established by possession, acquiescence and agreement of the parties." The decision actually made in the case was that the dividing line had been established by agreement. In view of that decision there was of course no place for the application of the apportionment rule. Apportionment of the excess is resorted to for the purpose of determining the true location of the line or lines. An agreed boundary line may or may not correspond with the true line. Hoxey v. Clay, 20 Texas 582; Harn v. Smith, 79 Texas 310, 15 S. W. 240; Tide Water Oil Co. v. Hale, 92 S. W. (2d) 1102. In our opinion the rule as to apportionment or proration of excess is more correctly classified as a rule of construction, to be applied, like other rules of construction, when the facts of the particular case are such that its use best serves to carry into effect the intention of the surveyor, grantor or parties to the deed. In Johnson v. Knippa, 127 S. W. 905, the rule was treated as a rule of law.

The first means presented by defendants in error "as more certainly or more equitably locating" the boundary line in issue, is to construct Block G "by course and distance from its undisputed northeast and southeast corners called for in its field notes, without relation to any other tracks or blocks for which it may call." The rule here invoked, that a survey may be constructed by course and distance from its undisputed corner or corners, is usually appropriate in locating an independent survey rather than in determining the location of an unmarked dividing line between sections or subdivisions in a block or tier having established outside lines or corners. It is also to be observed that, like other rules of construction, it will yield to another rule that better enables the court, under the facts of the particular case, to give effect to the intention of the parties. Gill v. Peterson, 126 Texas 216, 223-224, 86 S. W. (2d) 629. In the instant case the dominant intention of the parties was to partition the tract into seven blocks, each having the same acreage and contiguous the one to the other. Full effect is given to that intention by the proration of the excess. The intention would not be accomplished if Block G

were constructed by course and distance from its northeast and southeast corners without relation to the other blocks and without reference to the excess existing between the northwest corner of Block B and the northeast corner of Block G.

Our conclusion that the location of the boundary line between Blocks F and G is correctly determined by prorating the excess among the several blocks is not in conflict with Petty v. Paggi Brothers Oil Co. (Com. App.) 254 S. W. 565, or with Thomson v. Langdon, 87 Texas 254, 28 S. W. 931. There are important differences between the facts of the Petty case and those of the instant case. In that case the court concluded that the 15 acre tract in the east part of the 20 acres was actually surveyed and its corners marked and that the 4 acre tract and the 1 acre tract were not surveyed, and further concluded, upon a consideration of the deeds in the light of the surrounding circumstances, that the parties intended that the 4 acre and the 1 acre tract should include all the balance of the 20 acre tract after the conveyance of the particular 15 acres to the plaintiffs. It was on account of these conclusions that the court (in the first part of its opinion which approved the trial court's finding as to the location of the southwest corner of the tract with the resulting excess) held that no part of the excess within the 20 acre tract should be awarded to the plaintiffs, to whom the 15 acres had been conveyed. There are no similar facts in the instant case. Block G was not surveyed and its northwest and southwest corners were not marked, and there is nothing to evidence an intention that the blocks to the west of Block G should include the balance of the tract partitioned, whatever its acreage, after the conveyance to E. A. Anderson of the particular 13-4/7 acres designated Block G.

The second portion of the opinion in the Petty case, from which the quotation is made in the opinion of the Court of Civil Appeals herein (141 S. W. (2d) 969, 972) has no reference whatever to apportionment or other disposition of excess within the 20 acre tract. That part of the opinion begins with the assumption that the trial court's findings as to the location of the southwest corner of the 20 acre tract are without support in the evidence, and it is then held that, since there is nothing on the ground to indicate the original location of the southwest corner of the 20 acres, that tract and its southwest corner are correctly constructed by course and dis-

tance from its undisputed southeast corner. Under such construction there was no excess within the 20 acre tract and therefore no question as to apportionment and no problem or difficulty with respect to the lines between the three subdivisions.

In Thomson v. Langdon, 87 Texas 254, 28 S. W. 931, a survey numbered 104 and particularly its south line were established by course and distance from its identified northwest corner instead of apportioning between that survey and survey No. 105 immediately to its south an excess of 150 varas found on the ground between the northwest corner of survey No. 104 and the identified southwest corner of survey No. 105. The facts in the case are not fully disclosed by the opinion, which treats the two surveys, although made by one surveyor on the same day, as two separate surveys rather than as parts of a block or tier. It is shown by the opinion that an apportionment of the excess distance north and south between the two surveys would establish the south line of survey 104 one hundred varas farther south than the distance called for in the field notes. It further appears from the meager agreed statement of facts and map on which the case was tried that the apportionment of this excess distance would, on account of the great difference between the length of the south line of survey 104 and the length of the north line of survey 105, give to survey 104 about 50 acres of land which but for such apportionment and extension of that survey would belong to the public domain. These facts doubtless influenced the court in its decision to resort to the other rule of construction, course and distance from an established corner of the survey. In the instant case there are no such facts, and no unreasonable or inequitable result is reached in the apportionment of the excess.

In answer to the suggestion, that all of those owning interests in Blocks A, B, C, D and E, as well as the owners of Blocks F and G, are necessary parties in a suit in which the excess is prorated among the several blocks, is that this is not a suit for partition but one for the determination of the true location of the boundary line between Blocks F and G and that the judgment rendered herein will not directly affect those who own interests in the blocks other than F and G. The judgment will not apportion the excess among all of the blocks. It will merely fix the location of the boundary line between

Blocks F and G by the use of the apportionment rule of construction. Stahlman v. Riordan, 227 S. W. 726.

We cannot sustain the contention of defendants in error that, by reason of the execution on October 19, 1931, of a correction oil and gas lease by E. A. Anderson to Jim Cloud, Inc., and others who then owned an interest in the lease on Block G, and by reason of the execution by E. A. Anderson of mineral deeds, after red crown stakes and iron pipes had been placed at what were believed to be the corners of Block G, the boundaries of that block must be confined to the truth as marked by such stakes and iron pipes.

It is apparent from the testimony of Schlueter, who set the stakes and of Johnson, who set the iron pipes, that neither of them was aware of the existence of the excess between the northwest corner of Block B and the northeast corner of Block G and that each of them erroneously believed that the true location of the northwest corner of Block G and the northeast corner of Block F was but 243.2 varas west of the northeast corner of Block G. The correction lease and the mineral deeds contain no calls for red crown stakes or for iron pipes at any of the corners of Blocks G or Block F. The original lease executed by E. A. Anderson appears by erroneous reference to corners of T. D. Anderson's land to cover both Block F, not owned by E. A. Anderson, and Block G, but the lease undoubtedly covers all of Block G and it clearly shows by its recitals the intention of the lessor to lease the land that he acquired by inheritance from Paulina Anderson. The description in the correction lease and in the mineral lease is exactly the same as that contained in the partition deed by which Block G was conveyed to E. A. Anderson. This fact, together with recitals in the correction lease and in the mineral deeds, that the land intended to be leased and conveyed is tract G or Block G, clearly disclosed the intention of the parties to those instruments that the land affected by them should be the very land that E. A. Anderson had acquired by the partition deed.

In view of the foregoing facts, it is our opinion that the calls in the correction lease and in the mineral deeds for the northeast and southeast corners of Lillie Willis' land are referable to those corners as described in the partition deed, that is, the corners unmarked at the time the deed was executed but correctly located in the manner we have indicated, and are

not referable to the red crown stakes or to the iron pipes, which are not called for in the correction lease and mineral deeds and which were placed by persons who did not know of the excess and consequently were mistaken as to the true location of the corners.

Defendants in error in their brief filed in the Court of Civil Appeals present the facts in evidence hereinafter set out as legally sufficient to establish, by agreement, by acquiescence and by estoppel, the boundary line between Blocks F and G as marked by the red crown stakes set by Schlueter. Their brief filed in this court discusses such facts only as grounds of estoppel.

The evidence relied upon is in substance as follows: After red crown stakes were set in May or June, 1931, by Schlueter, a surveyor, and iron pipes by Johnson, both employees of Jim Cloud, Inc., to mark the northwest and southwest corners of Block G, Woodbeck, employee of the owner of the oil and gas lease on Block F, in November, 1932, accepted and used the stakes and pipes as marking the corners of Blocks F and G for the construction of a wire fence along what he thus took to be the boundary line between the two blocks. Woodbeck testified that when he built the fence he did not know about a survey of land and merely accepted the stakes where he found them as marking the corners. In the summer of 1932 and before he built the fence, Woodbeck pointed out to E. A. Anderson, to whom Block G had been conveyed by the partition deed, the red crown stake as marking the northeast corner of Block F and the northwest corner of Block G; whereupon Anderson insisted that the corner was 100 or 150 feet farther west.

In February, 1935 E. A. Anderson built a house for a residence and other small improvements on Block G, the house being about 100 feet east of the fence that Woodbeck had built and the other small improvements "right up against" the fence. A short time thereafter, in May or June, 1935, Woodbeck rebuilt the barb wire fence, making it higher and stronger. While Woodbeck was rebuilding the fence E. A. Anderson came to him and told him that the fence was on his (Anderson's) land but did nothing to prevent its construction.

Plaintiff in error Great Plain Oil & Gas Company, owner of the oil and gas lease on Block G, in October, 1933, made

application to the Railroad Commission for a permit to drill its well No. 3 at a location 181 feet east of the west line of Block G, accompanying the application with a letter which stated that defendant in error Foundation Oil Company had, over the protest of Great Plains Oil & Gas Company, located its well No. 4 181 feet, instead of 200 feet, west of the line between the two leases. The Railroad Commission granted the application, giving permission for the drilling of the well as a direct and equidistant east offset to Foundation Oil Company well No. 4. The well No. 3 was drilled 181 feet east of the line on which Woodbeck had built the fence.

The record contains no evidence of agreement fixing the boundary line between Blocks F and G unless it can be found in such acquiescence as is shown by the foregoing statement. Long acquiescence in a line is evidence from which it may be inferred that the parties by agreement established such line as the true line, and from such acquiescence a jury or a court may find that the line used is the true line. Bohny v. Petty, 81 Texas 524, 528, 17 S. W. 80; Schunior v. Russell, 83 Texas 83, 96, 18 S. W. 484; Note 69 A. L. R. pp. 1430, 1480, 1515. But acquiescence in a line other than the true line will not support a finding of an agreement establishing the line as the boundary when there is no other evidence of agreement than acquiescence and when it is affirmatively shown that the use of the line resulted not from agreement but from a mistaken belief of the parties that it was the true line. Stier v. Latreyte, 50 S. W. 589; Hunter v. Malone, 49 Texas Civ. App. 116, 108 S. W. 709; Gulf Oil Corporation v. Marathon Oil Company, 137 Texas 59, 152 S. W. (2d) 711, 9 TSCR 375. Similarly, when the true location of the line is conclusively proven, mere acquiescence in another line in the mistaken belief that it is the true line will not support a finding that such other line is the true line. Buie v. Miller, 216 S. W. 630 (application for writ of error refused); Thompson v. Allen, 111 S. W. (2d) 791.

In the instant case the true location of the line between Blocks F and G is proven by undisputed evidence and it is further conclusively shown by the evidence that such acquiescence as there was in the line marked by the red crown stakes and the fence resulted from the mistaken belief that it was the true line.

The defense of boundary by estoppel cannot be sustained

because there is no proof of one, at least, of the essential elements of estoppel. The opinion written by Justice Van Devanter in Oklahoma v. Texas, 268 U. S. 252, 257, 69 L. Ed. 937, 943, 45 Sup. Ct. 497, contains the following statement:

"Only where conduct or statements are calculated to mislead a party, and are acted upon by him in good faith, *to his prejudice*, can he invoke them as a basis of such estoppel." (Our italics.)

In Hunter v. Malone, 49 Texas Civ. App. 116, 108 S. W. 709, 712, a case involving questions of boundary by agreement and by estoppel, the rule is thus stated by Justice Fly:

"Somebody must have been misled to his injury in order to constitute estoppel."

See also Tucker v. Smith, 68 Texas 473, 482, 3 S. W. 671; Koenigheim v. Sherwood, 79 Texas 508, 512, 16 S. W. 23.

Defendant in error Foundation Oil Company acquired the oil and gas lease on Block F by assignment on December 19, 1931, the assignment describing Block F as it is described in the original deed of partition and making no reference to stakes or iron pipes. We find in the record no evidence tending to prove that, prior to such acquisition of the lease by defendant in error, anyone acting for or representing plaintiffs in error, or their predecessors in title, pointed out the red crown stakes or iron pipes as marking the corners of Block F and G or represented that they marked the corners and no evidence that defendants in error, in acquiring the lease or other interests in Block F, relied on the stakes or pipes as defining its boundaries. It is affirmatively shown by the record that defendants in error have not constructed valuable improvements on the land in controversy. They have drilled no oil wells on it and they have built nothing on it except a barbed wire fence. There is no proof of injury, and consequently no estoppel.

We have carefully considered all of the propositions in the briefs of the parties. The case has been fully developed, and the judgment that should have been rendered by the trial court will be here rendered.

The excess distance on the ground between the northwest corner of Block B and the northeast corner of Block G,

above the total distance according to the field notes, is 52.4 varas. The proportionate part of the excess to be allotted to Block G is 8.2 varas, making the length of the north and south lines of that Block 251.4 varas instead of 243.8 as described in the field notes.

The judgments of the Court of Civil Appeals and the district court are reversed and judgment is here rendered that plaintiffs in error Great Plains Oil & Gas Company and E. A. Anderson have and recover of and from defendants in error, Foundation Oil Company, Lillie Willis and her husband, Tom Willis, W. H. Terrell, R. F. Northcutt and L. Richkie, judgment for the title and possession of the following described tract of land in Gregg County, Texas, being a part of the G. W. Hooper survey and described by metes and bounds as follows: beginning at the northeast corner of the E. A. Anderson fee tract, which is the upper northwest corner of Block No. 10, J. M. Christian land, now marked by a 2 inch iron pin from which a sweet gum 11 inches in diameter bears north 60° west 2 varas; thence west with the south line of Block 13, Julia Flemister land 251.4 varas; thence south 306.7 varas to the lower north line of Block 10, J. M. Christian land; thence east with the said north line of said Block 10 251.4 varas to corner marked by 2 inch iron pipe, being an inner northwest corner of said Block 10; thence north with the upper west line of said Block 10 306 varas to the place of beginning; and that, as to that part of the land described in plaintiff's original petition in district court which is not included within the metes and bounds above set out, plaintiffs in error take nothing by their suit.

The costs incident to the appeal to the Court of Civil Appeals are taxed against plaintiffs in error and the costs in this court are taxed against defendants in error.

Opinion adopted by the Supreme Court June 4, 1941.

Rehearing overruled July 16, 1941.