**Sam WINDHAM et al., Appellants,**

**v.**

**Fred M. WINDHAM, Appellee.**

**No. 3855.**

Court of Civil Appeals of Texas.

Eastland.

March 13, 1964.

Rehearing Denied April 3, 1964.

Callaway & Harmon, F. G. Harmon, Brownwood, for appellant.

Woodward & Johnson, Hal Woodward, Coleman, for appellee.

GRISSOM, Chief Justice.

In 1945, T. M. Windham and wife, Annie Windham, owned all the land involved in this suit between their children. In October 1945, they conveyed to their son, Sam Windham, a tract of land described as 197 acres, being 69 acres out of the Tom J. Sweeney Survey 134 and "128 acres of the J. Farrout Survey No. 133", in Brown County, reserving a life estate. At the same time they conveyed to another son, Fred Windham, a tract adjoining on the south the land conveyed to Sam, describing it as 135 acres out of said Farrout Survey and the E. M. Tanner Survey 132. Its beginning point was stated in the deed to be at a stake "in the South line of a 128 acre tract out of the J. Farrout Survey 133." The parents reserved a life estate

in this land also. In 1955, with the consent of Sam Windham, T. M. and Annie Windham, conveyed to their daughter, Mary Montgomery, 12 acres off of the south end of said tract of land that they had conveyed to Sam in 1945.

In April 1960, T. M. Windham was dead. T. M. and Annie Windham owed a debt secured by a lien on all the land and their creditor was trying to collect it. For the purpose of doing away with the life estate of Annie Windham so that each grantee could obtain and pay his proportionate share of said debt the creditor's attorney prepared and the parties executed the following instruments: (1) A quitclaim deed from Annie Windham, a widow, Mary Montgomery and her husband and James and Fred Windham to Sam Windham covering the same land conveyed to Sam by his parents in 1945, using the identical field notes and expressly reciting on the face thereof that it was the same land that has been conveyed to Sam by his parents in 1945; (2) Mrs. Annie Windham, Mary Montgomery and husband and James and Sam Windham executed a quitclaim deed to Fred Windham covering the same land conveyed to him by his parents in 1945, using the same field notes and expressly reciting that it was the same land that had been conveyed to Fred in 1945 by his parents; (3) at the same time, Sam Windham and Mary Montgomery and her husband executed a quitclaim deed to James Windham covering the same 12 acres of land out of the south end of the tract that had been conveyed in 1945 by the parents to Sam and which in 1955, with Sam's consent, had been conveyed by T. M. and Annie Windham to Mary Montgomery. In November 1961, Cleatus Byrd purchased said 12 acres from James Windham.

Fred Windham brought this suit in trespass to try title to a 9.9 acre tract and a 7.8 acre tract shown on a map prepared by a surveyor appointed by the court to survey said lands, which map is known in the record as plaintiff's exhibit one, and is as follows:

PLAT SHOWING
WINDHAM LANDS (AS FENCED)
E M TANNER SURVEY 132
JACOB FARROUT SURVEY 133
THOS S SWEENEY SURVEY 134.
BROWN COUNTY, TEXAS
R I Bennett
Coleman, Texas

As to the 9.9 acres, the question is where is the true boundary line between the tracts of land so conveyed to Fred and Sam Windham? Fred contends it is on the line from A to B as shown on said map. Sam and James Windham, Mary Montgomery and her husband and Cleatus Byrd say that it is to the South along the line C to D. A jury found (1) that the true north boundary line of the tract "deeded" to Fred by his parents in 1945 and by Sam et al in 1960, is located on the line between points A and B; (2) that the south boundary line of the tract of land "deeded" by the parents to Sam in 1945 and by Fred Windham et al in 1960 is located at the same place. In accord with these findings, the court awarded title and possession of the 9.9 acre tract to Fred Windham.

With reference to the 7.8 acre triangular tract, which joins the 9.9 acres on the north, a jury found (3) that the true east boundary line of the land deeded to Sam by his parents in 1945, and by Fred et al in 1960, is located on the line between points S and A, as shown on said map. It is agreed that said parents are the common source of title. The record shows that if the 7.8 acre tract was not conveyed to Sam that title thereto was still in the parents when they died. The jury found, in effect, (3) that the 7.8 acre tract was not conveyed to Sam. The court held that Fred had inherited a 1/4th interest therein and gave him judgment therefor. The defendants have appealed.

Appellants' point are in substance that Fred Windham failed to prove title to any part of the land awarded to him and that the court erred (1) in overruling their motion for an instructed verdict; (2) overruling defendants' objections to the charge; (3) refusing to submit to the jury the question of an agreed partition by Sam, James and Fred; (4) refusing to submit a requested issue as to whether they erected a fence along an agreed line between Fred, Sam and James; (5) overruling defendants' motion for judgment non obstante veredicto and in (6) awarding Fred Windham a 1/4th interest in the 7.8 acre tract.

■ We overrule appellants' contentions that the court erred in overruling their motions for an instructed verdict and judgment non obstante veredicto because the evidence relative to the 9.9 acres was sufficient to authorize a finding that it was included in the field notes of the deeds to Fred Windham from his parents in 1945, and his brothers and sister in 1960. Ownership of the 9.9 acres must be determined according to the true boundary line between the tracts deeded to Fred and Sam Windham. If the true boundary is along the line A to B, as the jury found, then the title to the 9.9 acres is vested in Fred Windham by virtue of said deeds. It was stipulated that the parties, except Byrd, are the heirs of T. M. and Annie Windham, who formerly owned all the land and who are the common source of title. The field notes to the land conveyed to Fred and Sam by the parents in 1945, were identical with the field notes in the quitclaim deeds executed in 1960. A surveyor was appointed by the court to locate the boundary lines. His testimony was to the effect that he found the undisputed northeast corner of the Farrout Survey 133 at the point marked S on the map and then went south down the west line of the Tanner Survey the 1820 varas called for in the deeds to Sam Windham and then continued 23.3 varas further than Sam's field notes called for to a fence. He located the boundaries of the tracts described in said deeds to Sam and showed them on said map in Orange. He, likewise, traced from the field notes and what he found on the ground, the land described in the deeds to Fred Windham. He testified in effect that the north line of the deeds to Fred was the same as the south line of the deeds to Sam. He began the field notes of the deeds to Fred in the south line of the 128 acre tract out of the Farrout survey conveyed to Sam as called for in the field notes in Fred's said deeds. He found the south boundary of the

tract conveyed to Sam lay along the line from point A to B and that the north line of the Fred Windham land was the same as Sam's south line. The deeds to Fred called for his tract to begin in the south line of the Sam Windham tract. The evidence supports the conclusion that the 9.9 acre tract was included in said conveyances to Fred Windham and that his north boundary is located on the line from A to B, as found by the jury.

The 1960 quitclaim deed to Fred Windham was signed by his brothers and his sister, that is, by all the appellants except Byrd, who had not then bought the 12 acres quitclaimed to James by Sam and Mary. The calls in the deeds support Fred Windham's contention that the north line of the 9.9 acre tract is the true boundary line between the tracts conveyed to Sam and Fred Windham and that it is located along the line between points A and B. The call for the number of acres conveyed to Sam out of the Farrout survey shows he was to get 128 acres out of that survey but the court's surveyor testified, from, among other things, his findings on the ground, that by fixing the north boundary line of Fred Windham's tract at the place where the jury and the court fixed it that Sam Windham got 134.3 acres out of the Farrout survey which is 6.3 acres more than his deeds call for and, if his contention prevails as to the location of the boundary, Sam Windham will get an additional 9.9 acres, which would give him 16 plus acres more than is called for by his deeds. The deeds to Fred Windham call to begin at a stake in the south line of Sam Windham's 128 acre tract out of the Farrout survey, said stake being on the north bank of Pecan Bayou and on the east bank of a slough a large rock marked with a cross bears south 46 east 7.5 varas. Neither this marked rock nor the stake could be found. However, said surveyor did testify that the beginning corner of Fred's land, according to his deeds and field notes, if placed on the line from point A to B, as

shown on plaintiff's exhibit one, would be on the north bank of the Bayou, but that if it were located as claimed by appellants it would be on the south side of the slough and the east bank of the Bayou, contrary to the controlling calls in all said deeds. Said surveyor found on the ground that the most northerly fence fitted the call in the deed to Sam for his beginning point and that the call for the number of acres out of the Farrout Survey deeded to Sam is more nearly correct by using the line A to B as Sam's south boundary line. He further testified that by fixing the boundary line along the line from A to B, as it was fixed by the jury, that said line goes into the north bank of the Bayou, in accord with the calls in all the deeds, while if the line C to D, claimed by appellants, was used as the boundary line the line would come into the east, instead of the north bank, of the Bayou and be contrary to the calls for the north bank of the Bayou in all the deeds. We conclude that there was sufficient evidence to sustain the findings as to the true boundary line between the tracts of land "deeded" to Sam and Fred Windham and to support the judgment awarding the 9.9 acres to Fred Windham.

We shall now consider that part of the judgment awarding Fred Windham a one fourth interest in the 7.8 triangular tract. The jury found in answer to issue 3 that the true east boundary line of the land conveyed to Sam was located on the line from S to A, as shown on said map. The evidence sustains that finding. It was undisputed that the 7.8 acre tract had been owned by T. M. and Annie Windham; that it had not been conveyed, unless it was conveyed to Sam, and the jury found that it had not been conveyed to Sam. Therefore, the judgment awarding Fred Windham a one fourth interest in the 7.8 acre tract is correct.

Appellants requested the court to submit issues inquiring in substance whether, in 1960, the Windham children agreed

on a partition of the land; whether Sam and Fred agreed on the location of the dividing line between their tracts, and whether, when Fred built a fence, the fence was erected on an agreed line at its present location. The court did not err in refusing to submit said issues because appellants testified that at said time there was not any dispute or uncertainty as to the true location of that boundary, which is prerequisite to fixing its location by a parol agreement. Davis v. Miers, Tex.Civ.App., 308 S.W.2d 277, 280, (Ref. N.R.E.); Gulf Oil Corporation v. Marathon Oil Co., 137 Tex. 59, 152 S.W.2d 711. We think the court did not err in refusing to submit an issue as to whether there was a partition among the children, etc. among other reasons, because appellants called as a witness the attorney who prepared the 1960 quitclaim deeds and he testified that the purpose of said deeds was to avoid the effect of the life estate then still existing in Annie Windham so the children could borrow money on their respective tracts and each pay off his share of said debt. He testified, and the record shows, that the 1960 quitclaim deeds used the identical field notes that were contained in the 1945 warranty deeds from the parents and, assuming there was a partition nevertheless, it was still necessary that the boundary line between Sam and Fred Windham be established.

■ There were no fact issues as to an agreement between Sam and Fred Windham as to the true location of the boundary line between them or as to the erection of a fence on an agreed line. The appellants who testified, and the only ones who apparently knew anything about the matter, testified that there was then no uncertainty or dispute about the location of the bounda- ry line. As to the erection of a fence on an agreed line, Sam Windham testified that he was not present when the fence was erected. The evidence was to the effect that Fred Windham having an immediate necessity for grass for his cattle, hurriedly put up a fence on the shortest line. Sam Windham answered the question as to whether there was then a dispute about the boundary line, "Not a bit." He further testified: "That south line was so plain, it has been there and we had known it so long, and Fred laid the line off himself. It was so plain there, you know, it wasn't no necessity in discussing it. We all knew where it was; Fred knew where it was, the line between he and the 12 acres." James Windham upon being questioned about a dispute as to the location of the line in 1960, answered, "I didn't think there was any dispute about it." Appellee says that appellants' contention in this respect is actually that acquiescence of the parties in placing the fence near the south line constituted an agreement, as a matter of law, that such was the true boundary line. If this is a correct interpretation of their contention, it cannot be sustained. It has been decided that acquiescence in a line other than the true boundary line will not support a finding of a boundary agreement when there is a mistake in believing it was the true line. Great Plains Oil & Gas Company et al v. Foundation Oil Company et al, 137 Tex. 324, 153 S.W.2d 452. Furthermore, if the 1960 quitclaim deeds be claimed as fixing the location of the boundary line they do not have that effect because they contained the same field notes that were used in the 1945 deeds.

All of appellants' points are overruled. The judgment is affirmed.