# NO. 12-12-00380-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *HARRY D. SCATES, JR. AND WIFE,* | § | *APPEAL FROM THE 273RD* |
| *MANDY SCATES,* | | |
| *APPELLANTS* | | |
| | | |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| | | |
| *FORREST E. CRAWFORD AND WIFE,* | | |
| *SHERRY L. CRAWFORD,* | | |
| *APPELLEES* | § | *SHELBY COUNTY, TEXAS* |

## MEMORANDUM OPINION

Harry D. Scates, Jr. and Mandy Scates appeal from an adverse judgment rendered by the trial court in a suit brought by Forrest E. Crawford and Sherry L. Crawford to determine the location of the common boundary line between their neighboring tracts of land. In three issues, the Scateses contend the judgment was improper, is not supported by sufficient evidence, and is erroneous because the trial court inappropriately applied the apportionment rule. We affirm.

### BACKGROUND

In 1941, the owners of 190 acres known as the J.M. Williams homestead tract partitioned the property. They divided it into seven tracts or "blocks" varying in size from thirty-one acres to thirty-five acres. Added together, the total amount of acreage purportedly divided among the seven blocks was 235 acres. Each block was specifically described by separate field notes.

In 1997, the Scateses bought Block 6, which, according to a recital in the deed, contains thirty-three and one-third acres. Directly north, and sharing a boundary with Block 6, is Block 5, which the Crawfords bought in 2008. The 1941 partition deed attributed thirty-one acres to Block 5. However, a 1974 survey revealed that Block 5 contains 24.08 acres–the amount recited in the Crawfords' deed. Block 7 is directly south of Block 6, and the two tracts share a boundary line.

After the Crawfords purchased the property, a question arose as to the location of the boundary line between Block 5 and Block 6. The Crawfords filed suit against the Scateses requesting a declaratory judgment "concerning the proper ownership and boundary lines" and to "declare proper title to the approximately seven (7) acres of land of which ownership is disputed." They also alleged causes of action to quiet title and for trespass to try title. Additionally, they asserted causes of action for breach of contract, breach of the duty of good faith and fair dealing, and declaratory judgment against Lawyers Title Insurance Corporation. They later nonsuited Lawyers Title Insurance Corporation.

The Crawfords hired Mark Birdwell to survey the property because of uncertainty about the location of the boundary line between Block 5 and Block 6. A fence crosses from the east boundary to the west boundary, and the Scateses claim this fence marks their north boundary line. The Crawfords contend that their south boundary line is south of that fence. Birdwell testified that Block 6 was originally supposed to be about 33.5 acres. Birdwell determined that the properties "matched up" on paper, that is, when looking at the deed descriptions, but the two tracts of land overlap on the ground by 6.702 acres. The Scateses also hired a surveyor, Jeff Opperman, who determined that there was no overlap. However, he asserted that Block 6 contains only 24.56 acres.

In its findings of fact, the trial court found that the original surveys for Block 5 and Block 6 overlap each other for a total of 6.702 acres. It further found that the original surveys called for the south boundary line of Block 5 and the north boundary line of Block 6 to be a post oak marked with an X. Additionally, the court found that the post oak is missing and could not be located in subsequent surveys. The court found that it was the intent of the original surveyor and the owners of the J.M. Williams homestead that the Crawfords' predecessors in title should be conveyed 31 acres and the Scateses' predecessors in title should be conveyed 33.5 acres. The trial court set the common boundary line between Block 5 and Block 6 as a perpendicular line "from the east and west boundary lines of the overlapping acreage, which would provide for 31/64.5 of the overlapping acres north of the boundary line and 33.5/64.5 of the 6.702 overlapping acres south of the boundary line." The court further ordered that title is vested in the Crawfords as to the northern 31/64.5 of the overlapping acres, or 3.221 acres, and title is vested in the Scateses in the southern 33.5/64.5 of the 6.702 overlapping acres, or 3.481 acres.

Additionally, the court ordered Birdwell to survey the property to locate the court-ordered boundary line.

BOUNDARY DISPUTE

The Scateses raise three issues. They assert the trial court's judgment failed to conform to the pleadings, the nature of the case proved, and the findings of fact returned by the trial court. They argue that the Crawfords failed to meet their burden of proof. They contend the evidence is legally and factually insufficient to support the trial court's finding that an overlap of 6.702 acres exists. They argue that the original surveyor could have mislocated the north boundary line of Block 5. They further argue that the trial court should have disregarded the calls for distance in the Crawfords' deed because failing to disregard those calls resulted in the overlap. Finally, the Scateses assert that the apportionment rule is inapplicable to this case and the trial court erred in its manner of applying the apportionment rule.

## Standard of Review

When a party is attacking the legal sufficiency of the evidence supporting a finding on an issue for which he did not have the burden of proof, he must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id*. We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id*.

If a party is attacking the factual sufficiency of the evidence to support an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Capps v. Nexion Health at Southwood, Inc.*, 349 S.W.3d 849, 855 (Tex. App.–Tyler 2011, no pet). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The reviewing court may not substitute its opinion for that of the trier of fact, as it is the factfinder's role to judge the credibility of witnesses, to assign the weight afforded their testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Ford v. Panhandle & Santa Fe Ry. Co.*, 252 S.W.2d 561, 563 (Tex. 1952).

**Applicable Law**

A person interested under a deed may obtain a determination under the Declaratory Judgments Act when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c) (West 2008). In adding this amendment, the legislature intended the proof elements required in boundary disputes to remain the same. H.J. of Tex., 80th Leg., R.S. 2032-33 (2007). When there is a dispute involving the boundary line between two adjacent tracts, it is the plaintiff's burden to locate the true boundary line on the ground. *See Brown v. Eubank*, 378 S.W.2d 707, 711 (Tex. Civ. App.–Tyler 1964, writ ref'd n.r.e.).

The question of where boundaries are on the ground is a question of fact to be determined from the evidence. *Silver Oil & Gas, Inc. v. EOG Res., Inc.*, 246 S.W.3d 197, 202-03 (Tex. App.–San Antonio 2007, no pet.). This is equally true where the dispute involves two competing surveys, each purportedly showing the same line in different locations. *Id*. at 203. When finding the lines of a survey, the cardinal rule is that the footsteps of the original surveyor, if they can be ascertained, should be followed. *Id*. at 204. If the actual lines and corners run by the original surveyor can be found, they are controlling, even if they are inconsistent with the calls and references in that surveyor's field notes. *Id*. When one can locate on the ground with certainty and without inconsistency the objects or monuments designated by the original surveyor as marking the lines he actually traced, the survey must be laid out from those points. *Id*. However, if the location of the actual footsteps of the surveyor cannot be established with reasonable certainty, all the surrounding facts and circumstances should be considered in order to arrive at the purpose and intent of the surveyor who made the original survey. *Id*. When trying to reestablish a boundary, the law of legal preferences gives dignity to calls in the following order: (1) natural objects, (2) artificial objects, (3) course, and (4) distance. *Id*.

Where a tract of land is subdivided and is subsequently found to contain either more or less than the aggregate amount called for in the surveys of the tracts within it, the proper course is to apportion the excess or deficiency among the several tracts. *Humble Oil & Refining Co. v. Manziel*, 187 S.W.2d 149, 152 (Tex. Civ. App.–Texarkana 1945, writ ref'd w.o.m.). Where a length of a line of the same survey varies from the length called for, it is presumed, in the absence of circumstances showing the contrary, that the variance arose from imperfect measurement of the whole line, and the variance must be distributed between the several

4

subdivisions of the line in proportion to their respective lengths. *Id*. Thus, where an old survey is being retraced, excesses over course and distance calls between original monuments on the ground must be prorated among the various sections within a given block or system of surveys. ***Carmichall v. Stanolind Oil & Gas Co***, 256 S.W.2d 129, 132 (Tex. Civ. App.–Amarillo 1952, writ ref'd).

## Sufficiency of the Evidence

The J.M. Williams homestead tract contained 160 acres out of the J.T. Covington Survey and thirty acres out of the A. Fultz Survey. It is undisputed that the parties to the original partition deeds attempted to allocate more acreage than they had available to partition. The original 190 acres were divided into seven tracts with Blocks 5, 6, and 7 lying to the east of a road, and the other four blocks to the west of the road. The east-west calls in the deeds call for the western corners to be at a point in the Jericho Road. That road is now a farm to market road and has changed in size since the partition. Opperman testified that the distances east and west on both the Scateses' and the Crawfords' tracts were at variance with the original partition deed call and those lines are about 200 feet short. Both sides agree on the location of the southeast and southwest corners of the original Covington Survey, as well as the Scateses' southeast and southwest corners. Opperman testified that he found the southwest witness tree for the Scateses' tract on the farm to market road and he set the southeast corner by distances and bearings.

Both Opperman and Birdwell testified as to having found the Crawfords' northwest and northeast corners. Birdwell testified that the joinders on the Crawfords' north line coincided with deed references and a prior survey of the tract to the north. Although they did not say they found the original monuments, neither side presented any evidence suggesting that the Crawfords' north boundary line is not in the location originally intended by the surveyor and parties to the 1941 partition deeds. Thus, the trial court was justified in believing the Crawfords' north line was properly located. Accordingly, the evidence shows the location of the east and west boundary lines of both the Crawfords' tract and the Scateses' tract, as well as Block 7, going from the northern line of the Crawfords' property to the southern line of Block 7, the entire length of the 190 acre tract.

Opperman testified that the northern boundary line of Block 7 "is within a couple of feet of deed calls where it should be." When the Scateses' tract was located with reference to the southern corners of the original partition, its northern boundary as claimed by the Scateses was

consistent with the calls in the deeds. Opperman testified that he found the Scateses' northeast and northwest corners, each marked by a half-inch iron rod. There is also a fence on what the Scateses claim is their north line. The iron rods Opperman referred to at each corner are near the fence. However, it is undisputed that the original partition deeds called for witness trees, and stakes, not iron rods, at these corners. Opperman testified that a stake and a half-inch iron rod could be the same thing. The witness trees were not found. Birdwell testified that the iron rods were not the original monuments. No evidence was introduced proving who placed those iron rods, or when, or why. Neither is there any evidence as to the origin of the fence at that location. It was for the trial court to resolve this conflict. *See Ford*, 252 S.W.2d at 563. Birdwell testified that, when measuring from the Crawfords' north line, their southern boundary lies south of the line that the Scateses claim is their northern boundary and that the two tracts overlap by 6.702 acres.

The trial court determined that the original monuments marking the Scateses' north line could not be located. Opperman applied the Scateses' deed calls to find those corners. There is no authority for the Scateses' argument that the trial court should rely on the Scateses' deed calls yet disregard the Crawfords' deed calls. *See Great Plains Oil & Gas Co. v. Found. Oil Co.*, 153 S.W.2d 452, 455 (Tex. 1941) (held that, rather than constructing one block out of partition by its known corners, court must apportion the excess among the several blocks). Likewise, the fact that Blocks 5 and 6 have common corners does not lead to the conclusion that the Crawfords' south line is where the Scateses claim it to be or that the court should not have created a new line. There is legally and factually sufficient evidence to support the trial court's finding that an overlap exists. *See Exxon Corp.*, 348 S.W.3d at 215; *Capps*, 349 S.W.3d at 855.

**Remedy**

To meet their burden to locate the true boundary line, the Crawfords had to provide sufficient evidence for the trial court to "arrive at the purpose and intent of the surveyor who made the original survey." *Silver Oil & Gas, Inc.*, 246 S.W.3d at 204. When the evidence shows that a tract of land contains less than the amount called for, it is appropriate for the court to apportion the deficiency. *Manziel*, 187 S.W.2d at 152. Based on this information, together with the acreage listed in each deed, the court could determine how best to achieve the intentions of the parties to the original partition deed. *See Great Plains Oil & Gas Co.*, 153 S.W.2d at 455-56 (The "intention of the parties is substantially and almost exactly fulfilled when the location of

6

the boundary lines between the blocks is determined by prorating the excess among the blocks according to their respective widths as called for in their field notes."); *Manziel*, 187 S.W.2d at 152.

The original surveyor and parties to the partition intended for the seven blocks to contain the full amount of the available acreage. They were simply mistaken as to how much acreage they could include in each block. The error arose when the original surveyor attempted to divide 190 acres into seven tracts containing a total of 235 acres. The recitations in the deeds as to the number of acres the original parties intended to attribute to each tract, while not accurate, is evidence of how they wanted to split the property. Further, Blocks 5, 6, and 7 lost land along the west boundary due to the expansion of the road, and the loss would be the same for each tract. Block 5, which was supposed to contain thirty-one acres, contains 24.08 acres. Block 6, which was supposed to contain thirty-one and one-third acres, contains 24.56 acres. Birdwell testified that Block 7, the tract south of the Scateses' property, is the one that is farthest south within the east side of the Covington Survey, and was also short on acreage. It contains 22.4 acres although it was supposed to contain thirty-three and one-third acres.

The evidence shows the locations of the corners of the original 190 acre tract. Where a corner is found, it influences the surveys in the block, even if the effect is to lengthen or shorten the distance called for in the other sections. *See Strayhorn v. Jones*, 289 S.W.2d 321, 327 (Tex. Civ. App.–Amarillo 1956), *aff'd*, 300 S.W.2d 623 (Tex. 1957). "The surveyor or courts distribute the excess or loss proportionately to all other sections in the block up to the mark so established." *Id*. Because the Scateses' south line was located and the Crawfords' north line was located, the deficiency should be distributed proportionately between the two blocks. The intent of the partitioners was to partition the tract into seven blocks, each having a certain number of acres. By using the fractional equation to represent the division of the original 190 acre tract, the trial court appropriately applied the apportionment rule to set the common boundary line between the Scates and Crawford tracts. *See Great Plains Oil & Gas Co.*, 153 S.W.2d at 455- 56. Because this is not a suit for partition, but one for the determination of the true location of the boundary line between Blocks 5 and 6, and the trial court's judgment will not affect those who own interests in the other blocks, the deficiency should not be apportioned among all tracts in the partition as argued by the Scateses. *Id*. at 457. Further, it is within the trial court's authority to appoint a surveyor to provide the definitive location of the boundary line and to

clarify the judgment. *See **Guerra v. Perez & Assocs.**, 885 S.W.2d 531, 533 (Tex. App.–El Paso 1994, no writ).

The Crawfords sought a determination of the location of their south boundary line. Pursuant to the Declaratory Judgments Act, the court determined that there is an overlap and decided where the boundary line should be. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(c). The judgment is consistent with the pleadings, the nature of the case, and the court's findings of fact.

It was not necessary for the Crawfords to ask for reformation of the deeds. The trial court's judgment, definitively establishing the location of the line in dispute, has the effect of reforming the deeds. *See **Craft v. Hahn***, 246 S.W.2d 897, 900 (Tex. Civ. App.–Eastland 1952, no writ). Additionally, the judgment finally vests rights as between the parties. *See **McWilliams v. McWilliams***, 531 S.W.2d 392, 393-94 (Tex. App.–Houston [14th Dist.] 1975, no writ).

### CONCLUSION

The evidence is sufficient to support the trial court's finding that Blocks 5 and 6 overlap. The trial court appropriately applied the apportionment rule and properly determined the location of the boundary line separating Blocks 5 and 6. We overrule the Scateses' three issues.

We ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered March 31, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 31, 2014**

**NO. 12-12-00380-CV**

**HARRY D. SCATES, JR. AND WIFE, MANDY SCATES,**
Appellants
V.
**FORREST E. CRAWFORD AND WIFE,
SHERRY L. CRAWFORD**
Appellees

Appeal from the 273rd District Court
of Shelby County, Texas (Tr.Ct.No. 09CV30,545)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the appellants, **HARRY D. SCATES, JR. AND WIFE, MANDY SCATES**, for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*